OPINION OF THE COURT
Smith, J.
The issues in this case are (1) whether the State Banking Law authorizes State-chartered commercial banks to purchase and sell annuities, either directly or through a subsidiary, and *358 (2) whether annuities are insurance and, thus, within the express statutory proscription of sales by commercial banks.
On December 20, 1989 and February 12, 1990, pursuant to requests by certain national banks, the Federal Office of the Comptroller of the Currency (OCC) issued Interpretive Letters No. 494 and No. 499, respectively, stating, in essence, that 12 USC § 24 (Seventh)[1] authorizes national banks to broker financial investment instruments, such as agricultural futures, options, and fixed-rate annuities. Thereafter, the New York State Bankers Association requested from the New York State Banking Department its opinion as to whether State-chartered commercial banks had comparable authority under State law. By letter dated January 24, 1991, the State Banking Department, for reasons similar to those stated in OCC Letter No. 499, opined that "brokerage of fixed-rate annuities by state-chartered banks is permissible because such activity falls within the banks’ power to broker financial investment instruments.” In a letter dated April 23, 1991, petitioners, consisting of three individual insurance agents and several nonprofit organizations representing the insurance industry, sought a ruling from the Banking Department, pursuant to section 204 of the State Administrative Procedure Act and Supervisory Procedure G 110 of the Regulations of the State Banking Department (3 NYCRR), declaring, among other things, that State-chartered commercial banks are not authorized, either directly or through a subsidiary, to sell annuities. In its response on May 17, 1991, the State Banking Department declined to issue a declaratory ruling and construed the request as one for interpretations of the Banking Law. The Banking Department stated that Banking Law § 96 (l)[2] authorizes State-chartered commercial banks to sell fixed-rate and variable-rate annuities, and that such activity may be carried *359 out either directly in the bank or through a subsidiary acquired pursuant to Banking Law § 97 (5).[3]
Petitioners then commenced this CPLR article 78 proceeding challenging the State Banking Department’s January 24th and May 17th Interpretive Letters, and for a judgment declaring that the sale of annuities by a bank, directly or through a subsidiary, is not an "incidental power” of the "business of banking” within the meaning of Banking Law § 96 (1). Supreme Court converted the proceeding to a declaratory judgment action to the extent necessary, and granted petitioners a judgment (1) annulling the Interpretive Letters, and (2) declaring that "the sale of annuities by a bank, directly or through a subsidiary, is not an 'incidental power’ of the 'business of banking’ within the meaning of section 96 (1).” The court reasoned that nothing in the language of Banking Law § 96 (1) expressly authorized State-chartered commercial banks to broker annuities and that such activity is not necessary to carry on the enumerated powers in the statute. The Appellate Division modified, on the law, by (1) reversing so much of the judgment as annulled the Banking Department’s determination and declared that the sale of fixed-rate or variable-rate annuities by State-chartered commercial banks is not an "incidental power” of the "business of banking” under Banking Law § 96 (1), (2) confirming the Banking Department’s determination, and (3) declaring that such a sale is an "incidental power” of the "business of banking” under Banking Law § 96 (1), and otherwise affirmed the judgment (190 AD2d 338). The Appellate Division stated that the "incidental powers” clause of Banking Law § 96 (1) was not intended to limit the power of banks to the specifically enumerated powers of the Banking Law, but, rather, was intended to permit banks to expand their banking services over time consistent with evolving business practices and their customers’ needs (see, id., at 341). The Court also acknowledged that such a construction of the "incidental powers” clause does not mean that banks are free to engage in any type of business activity and that, indeed, certain types of business activities are prohibited (see, id.). This Court granted leave to appeal.
It is settled that "the construction given statutes and regu *360 lotions by the agency responsible for their administration, if not irrational or unreasonable, should be upheld” (Matter of Howard v Wyman, 28 NY2d 434, 438; see also, Matter of Salvati v Eimicke, 72 NY2d 784, 791; Matter of Colt Indus. v New York City Dept. of Fin., 66 NY2d 466, 471). Deference to such construction is appropriate where the language used in the statute is special or technical and does not consist of common words of clear import (cf., Matter of SIN, Inc. v Department of Fin., 71 NY2d 616, 620). In addition, deference to an agency’s construction of a statute is warranted "[w]here the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459).
Banking Law § 10 authorizes the Banking Department to supervise and regulate all banking organizations. Pursuant to Banking Law § 11 (1), the Banking Department is "charged with the execution of the laws relating to the individuals, partnerships and corporations to which [the Banking Law] is applicable and shall exercise such powers and perform such duties as are conferred and imposed upon it” by the laws of this State. Furthermore, the Banking Board, within the Banking Department, may pass upon and determine any matter submitted to it for its determination (see, Banking Law § 14 [2]). Clearly, the "incidental powers” clause in Banking Law § 96 (1) does not consist of common words of clear import, and that clause is susceptible to differing interpretation. Because the Banking Department is charged with the supervision and regulation of the business of all banking organizations, it is presumed to have the requisite knowledge and understanding of the operational practices of such banking organizations and of the Banking Law. We conclude that the construction of Banking Law § 96 (1) afforded by the Banking Department was not unreasonable or irrational, and that the Appellate Division correctly deferred to the Banking Department’s determination that the sale of fixed-rate and variable-rate annuities by State-chartered commercial banks, either directly or through a subsidiary, is an "incidental power” of the "business of banking” within the meaning of the Banking Law.
Petitioners offer several reasons for rejecting the Banking Department’s determination. First, petitioners argue that banks are prohibited from exercising any powers not expressly granted to them, and that nothing in the plain language of Banking Law § 96 (1), including the "incidental powers” clause, expressly grants State-chartered commercial banks the *361 authority to sell annuities. Petitioners’ position is that the statute should be narrowly construed to limit the term "business of banking” in the "incidental powers” clause of that statute to those activities that are essential to achieving the expressly enumerated powers.
In Curtis v Leavitt (15 NY 9), this Court rejected a similar argument when construing analogous language in the predecessor to the current Banking Law. In that case, the Court reasoned that the enumerated powers in the statute "were evidently intended not to restrict the appropriate business of banking, but as a mere legislative definition of that business; a definition not indispensable, perhaps, but eminently useful” (id., at 58). The Court explained that since other laws restrained banks from engaging in certain activities, including the powers of discount and deposit, without legislative approval, the enumerated powers were intended to explicitly remove the restraints, rather than leaving them to be derived from the general grant to carry on the business of banking (see, id., at 58-59). In explaining that the term "necessary” should be afforded a flexible meaning, the Court stated:
"There may be an absolute necessity, a great necessity, and a small necessity; and between these degrees there may be many others depending on the ever varying exigencies of human affairs. It is plain that corporations, in executing their express powers, are not confined to means of such indispensable necessity that without them there could be no execution at all. The contrary doctrine would lead at once to a very great absurdity; for if there are several modes of accomplishing the end, neither one is indispensable, and each would exclude all the others. And thus, by inevitable logic, an express grant of power would lie ' forever dormant, because there are more modes than one of carrying it into execution.
"It is almost as difficult to say that the incidental power depends for its existence on the degree of necessity which connects it with the power in chief’ (id., at 64-65).
We have long been mindful that the business of banking is not static but rather must adjust to meet the needs of the customers to whom banking organizations provide a valuable service. Our courts must be cognizant of these adjustments in *362 ruling on cases involving interpretation of the Banking Law. Thus, in Dyer v Broadway Cent Bank (252 NY 430, 434), we stated that "care should be exercised not to cripple [banking organizations] and break down their usefulness by a narrow and unreasonable construction of the statutes which will result in unwisely limiting their usefulness in the transaction of business under modern conditions.” In Block v Pennsylvania Exch. Bank (253 NY 227, 233), we cautioned that " 'the transactions of banking * * * are not to be clogged, and their pace slackened, by overburdensome restrictions.’ ”
In Block, several New York City stockbrokers who had bought shares of stock and subscription rights on the order of a bank which was acting as agent for an unknown customer sought to recover damages after the bank refused to accept the certificates or pay the purchase price. In determining whether banks were authorized to purchase securities for the benefit of a customer, the Court acknowledged that the development and the evolution of business must also be considered. Thus, the Court stated:
" 'The central function of a commercial bank is to substitute its own credit, which has general acceptance in the business community, for the individual’s credit, which has only limited acceptability’ * * *. A bank 'manufactures credit by accepting the business paper of its customers as security in exchange for its own bank credit in the form of a deposit account’ * * *. It stands ready to exchange its own credits for those of its customers * * *. Whatever is an appropriate and usual incident to this substitution or exchange of credits, instead of being foreign to the functions and activities of banking, is in truth of their very essence. It is the end for which a bank exists” (id., at 230-231 [citations omitted]).
Furthermore, the Court stated that the test of a bank’s power to undertake certain activities "is the relation of the act to that substitution of credits which is of the essence of the banking function. Whatever risk is incidental to the fulfillment of that function, according to the practice of banking as it has developed in these days, is to be accepted and suffered as one of the perils of the business” (id., at 232; see also, O’Connor v Bankers Trust Co., 159 Misc 920, 923, affd 253 App Div 714, affd 278 NY 649 [a determination of the incidental *363 powers which are necessary to carry out the business of banking involves a careful consideration of banking experience and history]).
While this Court has not sanctioned every activity engaged in by banks as an incidental power necessary to carry on the business of banking, commercial banks in this State now engage in such activities as selling certificates of deposit, buying and selling securities on behalf of customers, establishing individual retirement accounts, and providing financial planning and investment counseling services. It therefore follows, as the precedents of this Court demonstrate, that the "incidental powers” clause of Banking Law § 96 (1) may be construed so as not to limit the term "business of banking” to those activities which are necessary to achieve the powers expressly outlined in the statute. Rather, the clause must be construed as an independent, express grant of power, intended to reflect the ever-changing demands of the banking business.
Petitioner’s reliance on the failure of the Legislature to include in the Banking Law a provision expressly authorizing State-chartered commercial banks to broker fixed-rate and variable-rate annuities as proof that the Legislature did not intend to so empower those banking organizations, is unpersuasive. It is settled that inaction by the Legislature is inconclusive in determining legislative intent (see, Clark v Cuomo, 66 NY2d 185, 191-192; Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, 433).
Turning to petitioners’ second argument, we reject the assertion that annuities are insurance which banks are not authorized to sell. To be sure, Insurance Law § 1113 (a) (2) includes "annuities” in its description of "kinds of insurance authorized.” However, the great weight of authority supports the position that annuities are not insurance. First, an annuity is defined as "[a] fixed sum payable to a person at specified intervals for a specific period of time or for life. Payments represent a partial return of capital and a return (interest) on the capital investment” (Black’s Law Dictionary 90 [6th ed 1990]). An insurance contract, on the other hand, is defined as "[a] contract whereby one undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event and is applicable only to some contingency or act to occur in the future” (id., at 802). Second, this Court has repeatedly embraced the notion that annuities are not insurance (see, People ex rel. Metropolitan Life Ins. Co. v *364 Knapp, 193 App Div 413, 416, affd 231 NY 630 [a contract for an annuity is not a contract for insurance]; see also, People v Security Life Ins. & Annuity Co., 78 NY 114, 128 [annuity contracts are not contracts of insurance and are not governed by any rules applicable to life insurance]). Third, one commentator in the field of Insurance Law has emphasized the differences between annuity contracts and contracts of insurance by stating:
"An annuity contract is almost diametrically opposed to [an insurance contract]. The person designated as the recipient is the person paying the money. He pays in a fixed sum usually at one time, in return for which the company must then perform a series of obligations over a period of years, at designated times. The hazard of loss is no longer upon the company but upon the recipient who may die before any benefits are received. Instead of creating an immediate estate for the benefit of others, he has reduced his immediate estate in favor of future contingent income. The positions are almost exactly reversed. Annuity contracts must, therefore, be recognized as investments rather than as insurance” (1 Appleman, Insurance Law and Practice § 84, at 295 [rev vol]).
Thus, we reject the claim that annuities are a classic form of insurance. Moreover, we reject petitioners’ assertion that the Banking Department exceeded its statutory authority by permitting State-chartered banks to sell insurance. By opining that section 96 (1) of the Banking Law authorized the brokerage of annuities by State banks as a power incidental to the business of banking, the Banking Department was acting within the scope of the authority delegated to it by the Banking Law (see, Banking Law §§ 10, 11 [1]; § 14 [2]; § 96 [1]).
Further, we discern no need to depart from the Banking Department’s determination that the brokerage of fixed-rate and variable-rate annuities by State-chartered commercial banks is permissible because such activity falls within the bank’s power to broker financial investment instruments. Indeed, State-chartered commercial banks commonly broker other financial investment instruments, including certificates of deposit and various types of securities, which closely resemble annuities.
Petitioners’ claim that the Banking Department relied ex- *365 elusively on a Federal agency’s analysis of Federal law, without regard to any State law, is untenable. Although the Banking Department noted that its opinion was based on "reasons similar to those stated in OCC Letter 499,” its Interpretive Letters clearly demonstrate that it considered the relevant sections of the Banking Law in rendering its opinion.
Further, petitioners’ assertion that the Banking Department’s determination should be rejected since the OCC Letter it relied on was struck down by a Federal appellate court, is unavailing. In Variable Annuity Life Ins. Co. v Clarke (998 F2d 1295), an insurance company commenced an action challenging OCC’s Interpretive Letter of March 21, 1990, determining, among other things, (1) that 12 USC § 24 (Seventh), which grants national banks the power to engage in incidental activities necessary to the business of banking, authorized national banks to sell annuity contracts, (2) that 12 USC § 92, which permits national banks to act as insurance agents in towns with less than 5,000 inhabitants, does not limit the power of national banks to sell insurance in towns with a population of over 5,000, and (3) that annuities are not insurance. The Fifth Circuit Court of Appeals concluded that annuities are a form of insurance, and held that section 92 impliedly prohibits national banks from selling annuities in cities with a population larger than 5,000, and that OCC’s determination that banks may sell annuities pursuant to the incidental powers clause of 12 USC § 24 (Seventh) is erroneous because the specific limitation on the power of national banks to sell insurance contained in section 92 controls the general grant of incidental power in section 24 (Seventh) (id., at 1296-1297).
New York currently has no statute that is analogous to 12 USC § 92, discussed in Variable Annuity (supra) which can be read as limiting or prohibiting the sale of annuities by banks. Moreover, as aforestated, the weight of authority is that annuities are not insurance contracts.
Finally, it is clear, as the Appellate Division noted, that Banking Law § 97 (5) permits State-chartered commercial banks to invest in the common or preferred stock of any corporation, including insurance companies other than life insurance companies, so long as the Banking Board’s decision in allowing such investment comports with the mandates of Banking Law § 10 (see, Banking Law § 14 [1] [d]; § 97 [4-a]).
*366 Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Simons, Bellacosa, Levine and Ciparick concur; Judge Titone taking no part.
Order affirmed, with costs.

. 12 USC § 24 (Seventh) authorizes national banks: "To exercise * * * all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of [title 62 of the Revised Statutes].”

. Banking Law § 96 (1) outlines the general powers of State-chartered commercial banks and also authorizes those banks to "exercise all such incidental powers as shall be necessary to carry on the business of banking.”

. Subdivision (5) of Banking Law § 97 authorizes a bank or trust company to invest in and have and exercise all rights of ownership with respect to "[s]o much of the capital stock of any other corporation as may be specifically authorized by the laws of this state or by resolution of the banking board upon a three-fifths vote of all its members.”