[648 NYS2d 776]

AMERICAN TRANSIT INSURANCE COMPANY, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 79949.)

Third Department, October 24, 1996

### APPEARANCES OF COUNSEL

*Marjorie E. Bornes,* New York City, for appellant.

*Dennis C. Vacco, Attorney-General,* Albany *(Peter G. Crary* and *Vernon Stuart* of counsel), for respondent.

### OPINION OF THE COURT

MIKOLL, J. P.

In 1970 the State enacted Insurance Law article 76 establishing the Property/Casualty Insurance Security Fund (hereinafter Fund), which provided for the payment of property and casualty insurance claims left unpaid due to the insolvency of an insurer. Initially, this legislation required that all property and casualty insurers pay into the Fund one half of 1% of their "net direct written premiums on policies insuring property or risks located or resident in this state" (Insurance Law

§ 7603 [b] [1]). When the net value of the Fund exceeded $150 million, the contributions were to stop (Insurance Law § 7603 [c]). However, if the net value of the Fund fell below $150 million, the contributions were to resume (Insurance Law § 7603 [c] [1]). The history of the Fund and its operation appears more fully in *Alliance of Am. Insurers v Chu* (77 NY2d 573).

Despite the original purpose for which the Fund was created, legislation enacted in 1979 provided that any net value of the Fund in excess of $240 million be credited to the State's general fund. Further legislation enacted in 1982 allowed $87 million of the Fund's corpus to be transferred to the general fund in exchange for a "dry appropriation" which was deemed an asset of the Fund in determining the Fund's net value.

In 1988 the net value of the Fund fell below $150 million, triggering the insurers' duty to contribute and which continued until the net value of the Fund exceeded $150 million four years later. Certain insurance companies responded by commencing actions challenging the 1979 and 1982 legislation.

In April 1991, the Court of Appeals in *Alliance of Am. Insurers v Chu* (*supra*) ruled that, *inter alia*, the legislation creating the Fund granted the contributing companies property rights to any income generated from their contributions between 1970 and 1973, and that the State "may neither appropriate those earnings to itself nor deprive the fund of assets that would generate such income" (*supra*, at 578). The Court further required the Fund to take certain actions to correct the situation created by such legislation (*supra*, at 590-591).

During the pendency of this Court of Appeals decision, other insurers initiated several actions in the Court of Claims regarding the Fund. These actions were settled by stipulation requiring, *inter alia*, that the State pay the Fund $73,209,004 plus interest on any unpaid portion of that amount, and interest on the dry appropriation of $87 million until that amount was fully restored to the Fund. The stipulation further provided that the moneys returned to the Fund would become assets of the Fund and could "not be directly distributed or credited * * * to individual plaintiffs or any person or entity alleging that it is similarly aggrieved or situated as plaintiffs". As to income generated by Fund assets in subsequent years, but not needed to pay either Fund awards or obligations, "the Insurance Department shall allow each insurer credit for or shall return to each insurer that portion of the income". Claimant herein was not a party to the *Alliance of Am. Insurers v Chu* (*supra*) litigation.

Claimant commenced the instant action in January 1990 prior to and separate from the other Court of Claims actions that were disposed of by the stipulation of settlement. In an amended claim (denominated complaint), claimant alleged that its contributions to the Fund for the years 1988 and 1989 exceeded the statutory maximum of one half of 1% by $232,329.52 in violation of Insurance Law § 7603. Claimant further alleged that it is entitled to judgment on the amount overpaid plus interest from the date of overpayment.

The Court of Claims, *inter alia*, granted claimant's motion for permission to file a second amended claim adding an additional claim and defendant entered a general denial along with several defenses. Subsequently, claimant moved for summary judgment asserting that the facts of the case were undisputed and that the only issues for determination were whether the State's procedure for computing the net value of the Fund was proper and whether the State was permitted to demand a contribution in excess of one half of 1% to replenish the Fund when its value dropped below $150 million. The State cross-moved for summary judgment dismissing the claim on various grounds.

The Court of Claims denied claimant's motion, granted the State's cross motion and dismissed the claim. The court first determined that, because claimant played no part in the *Alliance of Am. Insurers v Chu* (77 NY2d 573, *supra*) litigation, "it is not directly entitled to any of the remedies fashioned by the Court of Appeals" and that the *Alliance* decision is available to claimant only as a precedent establishing that the two legislative enactments which transferred moneys out of the Fund were not proper. The Court of Claims also found that claimant properly could have been required to make additional contributions to the Fund as a result of the invalidated enactments. The court further opined that the effect of the overpayment was negated by, and claimant benefited from, the settlement between the other insurers and the State since large sums of money were restored to the Fund, with interest, and more money was to be restored in the future which would postpone the need for future contributions to the Fund from other insurers for some time. The Court of Claims also concluded that the loss, if any, sustained by claimant, due to the diversion of the moneys from the Fund, could not be calculated with any degree of certainty until all assets were restored to the Fund, any payout of excess income was taken into account and the point at which future contributions would be required, if ever, is

calculated and compared to the situation that would have existed if the diversions had never occurred. The Court of Claims also held that, pursuant to Insurance Law § 7603 (b) (2), the Insurance Department only had to cap the insurers' contributions at one half of 1% of their net direct written premiums in establishing the Fund and that there was no cap on the resumed contributions. This appeal ensued.

■ There should be an affirmance of the order dismissing the claim. We reject claimant's contention that the Court of Claims erred in denying its motion for summary judgment because the Fund was improperly and artificially undervalued due to several miscalculations in determining the Fund's net worth. Liability based on miscalculation of the Fund's net worth was not set forth as a cause of action in the claim and was not considered by the Court of Claims. Consequently, that issue will not be considered on this appeal (*see, Matter of Town of Minerva v Essex County Indus. Dev. Agency*, 173 AD2d 1054, 1055, *lv denied* 78 NY2d 857).

■ Moreover, claimant's first cause of action fails because the damages allegedly sustained by claimant due to improper diversions of moneys from the Fund could not be calculated and, thus, are speculative in nature. A claim does not accrue until damages are ascertainable (*see, Otis El. Co. v State of New York*, 52 AD2d 380). Further, although claimant was not a party to the litigation, claimant's position and obligations under the Fund were altered and improved by the settlement. The repayments being made by the State will postpone the need for additional contributions from claimant and, thus, claimant's loss, if any, cannot be calculated until the State's repayments are complete.

■ Claimant's argument that, even if it was obligated to make additional contributions to the Fund because the Fund value fell below $150 million, those contributions were statutorily capped at one half of 1% of its net direct written premiums on policies (Insurance Law § 7603), is without merit. The cap established by Insurance Law § 7603 (b) (2) is omitted from Insurance Law § 7603 (c) (2), which provides that the additional contributions be apportioned ratably among certain kinds of insurance (Insurance Law § 7603 [c] [2] [A]) and among certain insurers (Insurance Law § 7603 [c] [2] [B]). The omission of the cap from Insurance Law § 7603 (c) (2) indicates that the Legislature intended to give the Insurance Department flexibility to respond to the Fund's financial needs in an efficient manner when a shortfall occurred. Applying the cap to

additional contributions by insurers would hinder the Insurance Department's ability to replenish the Fund and frustrate the original intent of the Legislature.

Further, the construction given statutes by the agency charged with responsibility for their administration, if not unreasonable, should be afforded deference (*see, Matter of New York State Assn. of Life Underwriters v New York State Banking Dept.*, 83 NY2d 353, 359-360; *Matter of Salvati v Eimicke*, 72 NY2d 784, 791). The interpretation the Insurance Department placed on Insurance Law § 7603 which limited its application to initial contributions to the Fund and not to additional contributions is not unreasonable and should not be disturbed.

WHITE, YESAWICH JR., PETERS and CARPINELLO, JJ., concur.

Ordered that the order is affirmed, without costs.