OPINION OF THE COURT
William J. Giacomo, J.
In this interpleader action commenced by Integrity Life Insurance Company the court was asked to determine which of the competing claimants were entitled to the distribution of an annuity.
The court, after reviewing the submissions of the parties, the relevant statutes, case law and the annuity contract, determines that the parties must evenly share the annuity distribution and all accumulated interest.
Factual and Procedural History
After living together since 1995, on March 4, 2000, Adda Mendelovici married Lieb Mendelovici.
On November 20, 2000, Integrity Life Insurance Company issued an annuity which named Adda as both the “Primary Owner” and the “Annuitant” and named Miriam Frons, plaintiff’s niece, as the “Annuitant’s Primary Beneficiary.” Plaintiff claims, and no one disputes, that this annuity was purchased via her own separate assets.
Sometime in March 2002, Integrity received a “Non-Financial Service Request Form” that bears a date of March 2, 2002, that changed the “Primary Owner” on the annuity from plaintiff to “Adda and/or Lieb Mendelovici.”
In 2003 Lieb died and Moritz Mendelovici and Raul Mendelovici, Lieb’s brothers, were named coexecutors of Lieb’s estate. In the process of going through some documents at plaintiffs request, Moritz discovered documents concerning the annuity.[1] Upon inquiry to Integrity, Moritz obtained a letter from an In *673 tegrity client services representative that stated that the “IRS rule says that on a policy where there is joint ownership if one owner passes, they both are considered deceased. Since there is no owner’s primary beneficiary designated The Lieb Mendelovici Estate now becomes the new owner.” (Jan. 30, 2004 letter from Chadonia Smith of Integrity Life Insurance Company.)[2]
In 2004, plaintiff commenced this action seeking recovery of the $100,000 annuity based upon a claim of conversion. Faced with conflicting claims to the annuity, Integrity commenced the interpleader action in January 2005, naming all parties with possible claims to the annuity.
On April 30, 2007, Justice Lawrence Horowitz dismissed the plaintiffs complaint for failure to prosecute pursuant to CPLR 3216. Plaintiff moved to vacate the April 30, 2007 default judgment dismissing her complaint and, in a companion motion, Integrity moved pursuant to CPLR 1006 (f) for an order to allow it to pay into this court the amount in dispute herein, then $121,102.13, and discharging it from any liability.
By decision and order dated April 22, 2008, this court denied plaintiffs motion to vacate the default and granted Integrity’s motion permitting it to pay into this court the amount of the annuity and its accumulated interest, i.e., $121,102.13, and discharging it from any liability to any claimant.
Now before the court is the outstanding issue of the competing claims to the proceeds of the annuity by the claimants, plaintiff Adda Mendelovici and Moritz Mendelovici as the coexecutor of the estate of Lieb Mendelovici (the estate claimant).
*674 Discussion
In the instant matter the court is presented with a nonqualified[3]
[4]annuity which is co-owned by “Adda and/or Lieb Medelovici,” and where there is no owner’s beneficiary designated.
At the outset the court notes that notwithstanding the estate claimant’s argument, Adda, despite having her claims in chief dismissed as outlined above, continues to have standing in the instant interpleader action.
The Annuity was Subject to the Force-Out Rule
Internal Revenue Code (26 USC) § 72 (s), entitled “Annuities; certain proceeds of endowment and life insurance contracts,” provides in pertinent part:
“(s) Required distributions where holder dies before entire interest is distributed—
“(1) • • .
“(B) if any holder of such contract dies before the annuity starting date,[4] the entire interest in such contract will be distributed within 5 years after the death of such holder.”
Commonly referred to as the “force-out rule,” this court will interpret the statute utilizing its plain language, i.e., if an annuity contract has joint owners, the distribution at death rules are applied upon the first death of “any holder.”[5] (See 26 USC § 72 [s] [1] [B].) The force-out rule requires the end of the annuity contract and distribution of the annuity. (26 USC § 72 [s].)
*675 Despite initial resistance to this approach by plaintiff, both parties now agree that this is the appropriate outcome. (See plaintiffs reply mem of law § V [B], at 9.)
This court holds that the “force-out rule” (26 USC § 72 [s] [1] [B]) is applicable to the annuity and requires distribution pursuant to the contractual terms of the annuity.
Which Party is Entitled to the Distribution
Initially, to the extent that the estate claimant seeks to persuade the court that Integrity has already determined that the estate claimant must be the prevailing party for the reasons set forth in the January 30, 2004 letter from Chadonia Smith, such argument is rejected. The fact that Integrity filed the interpleader action clearly indicates that Integrity would have this court make such determination. Furthermore, the court is not bound by any determination set forth in a letter of a client services representative, especially under the circumstances presented here.
It is important to note that the annuity at issue here is an annuitant-driven contract. An annuitant-driven contract is one where the contract is drafted to reflect a death benefit be paid out upon the death of the annuitant to the annuitant’s beneficiary. In an annuitant-driven contract, it is the death of the annuitant that ends the annuity contract.[6]
In contrast, an owner-driven annuity contract is one where the contract is drafted to reflect a death benefit be paid out upon the death of the owner to the owner’s beneficiary and where the annuitant is merely the measuring stick for the annuity. With an owner-driven contract it is the death of the owner that ends the annuity contract.[7]
The statute, 26 USC § 72, is written with a view to annuity contracts that are owner-driven. (See Anderson at 130.) Nonetheless the statute is applicable to all nonqualified annuities, whether owner-driven or annuitant-driven. (See 26 USC § 72.)
Pursuant to the provisions of the statute, if the annuity was an owner-driven contract, or if the owners of the annuity, Lieb *676 and Adda, had simply named an “Owner’s Beneficiary,” such “Owner’s Beneficiary” would have been entitled to the entire forced-out distribution. (26 USC § 72 [s].) Nonetheless in the annuity contract before the court no “Owner’s Beneficiary” is designated and the statute does not make any direction with regard to such eventuality.
Without the benefit of a named “Owner’s Beneficiary,” the estate claimant, relying upon the letter and the opinion of his expert, takes the position that the estate of the first joint owner to die becomes the owner’s beneficiary, ignoring the fact that the other joint owner survives. The court rejects this position.
The applicable rule, 26 USC § 72 (s) (1), does not provide that “on a policy where there is joint ownership if one owner passes, they both are considered deceased,” as stated in the letter. As set forth above, a joint owner’s death triggers the force-out rule, but this court finds no support, and the estate claimant offers no authority for his position that Adda is to be considered deceased. Accordingly, the “leap” taken by the estate claimant, based on the foregoing misconception, that “[sjince there is no owner’s primary beneficiary designated The Lieb Mendelovici Estate now becomes the new owner” is likewise rejected.
The position taken by the estate claimant’s expert, Robert C. Anderson,[8] is also rejected. While Mr. Anderson correctly states that the force-out rule requires the payment of the annuity as a death benefit pursuant to the terms of the annuity, the court rejects the balance of Mr. Anderson’s “opinion” on this point. The estate claimant offers no support, statutory or otherwise, for Mr. Anderson’s[9] “belief’ that “state law would require the death benefit to be paid to the estate of Lieb Mendelovici.” The estate claimant’s position is essentially a reverse tenancy by the entirety, i.e., that each joint owner is possessed of the whole, but instead of the survivor taking all, it is the estate of the first to die that takes. Such an outcome would be extraordinary and unprecedented. Thus, this court holds that without a named “Owner’s Beneficiary” it would be contrary to the annuity contract, as well as inequitable and contrary to public policy, to hold that the estate of the first joint owner to die becomes the owner’s beneficiary.
*677 Not surprisingly, plaintiffs position is the exact opposite of the estate claimant. Plaintiff asserts that Adda and Lieb owned the annuity jointly with rights of survivorship and that Adda, as the surviving joint owner, becomes the “designated beneficiary.”
In support of this position, plaintiff submits an agency bulletin from the National Western Life Insurance Company. In this agency bulletin, National Western sets forth an opinion which states that when a joint owner dies, “[be]cause a surviving joint Owner remains, the surviving joint Owner receives the distribution.” While this agency bulletin from the National Western Life Insurance Company seemingly addresses the matter at hand, it is irrelevant to the subject annuity and therefore unpersuasive. There is no indication that National Western Life Insurance Company is any way affiliated with Integrity, or any proof that the National Western annuity policy is comparable to the Integrity policy.[10] Moreover, this agency bulletin specifically expresses that its contents only reflect the company policy of National Western Life Insurance Company.[11]
It is well settled in New York that when real property is conveyed to a husband and wife who are lawfully married to each other at the time of the conveyance, they do not take as joint tenants or as tenants in common but as tenants by the entirety, each being seized by the whole and upon the death of one, the whole estate remains in the survivor. (See Matter of McKelway, 221 NY 15 [1917]; Goldman v Goldman, 95 NY2d 120 [2000].)
The same is not true for personal property. “[T]here can be no holding by the entirety in personalty.” (Hawthorne v Hawthorne, 13 NY2d 82, 83 [1963].)[12] Under the common law, the main difference between a joint tenancy and a tenancy in com *678 mon is that a joint tenant also has an automatic inheritance right of “survivorship,” pursuant to which, upon the death of one joint tenant, that tenant’s share in the property automatically passes to the remaining tenant. (United States v Craft, 535 US 274 [2002].)
EPTL 6-2.2 defines when an estate is in common, in joint tenancy or by the entirety. This statute provides that a “disposition of property to two or more persons creates in them a tenancy in common, unless expressly declared to be a joint tenancy.” (EPTL 6-2.2 [a].) To overcome the strong presumption that a tenancy in common was created, “a party must establish by clear and convincing evidence that a joint tenancy was intended to be created rather than a tenancy in common.” (Estate of Menon v Menon, 303 AD2d 622, 623 [2d Dept 2003], citing Matter of Vadney, 83 NY2d 885, 886 [1994].)
Here, while the annuity was designated to be held by Adda and Lieb “jointly,” the account documents submitted to the court do not contain any of the necessary survivorship language. (See generally Matter of Degnan, 55 AD3d 1238 [4th Dept 2008].) Furthermore, no evidence has been offered that the parties intended to create a joint tenancy rather than a tenancy in common.
Therefore, this court holds that plaintiffs position, that as a joint owner Adda takes the entire forced-out distribution, even though the annuity contains none of the necessary survivorship language, is contrary to New York law.
This court finds that Adda and Lieb held the annuity as tenants in common. As such, each party, Adda and the estate claimant, is entitled to 50% of the forced-out annuity distribution and its accumulated interest, i.e., 50% of the $121,102.13.
Any claims of either party not addressed herein are denied.

. Plaintiff claims that it was not until Lieb’s death that she found out that the annuity she had purchased had been changed from individual ownership to joint ownership with Lieb sometime in 2002. Plaintiff alleges that this change was unauthorized and accomplished through a forgery of her signature. *673 Moritz claims, but it is unclear from where this knowledge is derived, that the transfer of the annuity from plaintiffs sole ownership to co-ownership between Lieb Mendelovici and plaintiff was part of an estate plan where Lieb transferred certain of his personal assets to joint assets and vice versa. While the court is inclined to agree with plaintiffs counsel and disregard the factual contents of Moritz’ affidavit as hearsay and violative of the “dead man’s statute” (CPLR 4519), it need not make such determination. As will be demonstrated below, in determining the within matter, the court finds the contents of Moritz’ affidavit irrelevant to its determination.

. Ms. Smith cited no legal authority for this position.

. A “nonqualified” annuity occurs when funds are contributed without a connection to employment and “are considered ‘after-tax’ dollars because the individual contributing the funds cannot deduct the contribution.” (Robert C. Anderson, Estate Planning with Nonqualified Annuities: Navigating the Labyrinth, 3 NAELA J 119, 122 [2007].)

. In the instant matter the annuity starting date, or the date the annuity is irrevocably annuitized, had not yet occurred.

. The Internal Revenue Code does not specifically define “holder,” but the term “holder” seems to be generally accepted as a synonym for the term “owner.” Support for this can be found in Internal Revenue Code § 72 (s) (4), where the statute defines the term “designated beneficiary” as an “individual designated a beneficiary by the holder of the contract.” Only the owner of an annuity contract can designate a beneficiary, thus “the term ‘holder’ must mean ‘owner.’ ” (See Anderson at 145 n 48.) Moreover, the Internal Revenue Service also uses the term “holder” synonymously with the term “owner.” (See Internal Revenue Service Ruling No. 200313016, released Mar. 28, 2003, index Nos. 72.01-00, 72.07-00, 72.19-01, at 3 [“as nonqualified annuity contracts, the Contracts provide for distributions following the death of the owner of a Contract in accordance with the requirements of § 72 (s)” (emphasis supplied)].)

. As noted by the estate claimant’s expert, after the force-out rule of Internal Revenue Code § 72 (s) became effective on January 18, 1985, “most companies have only issued owner-driven contracts.” (See Anderson at 145.) Despite the 1985 amendment to the tax statute, Integrity’s annuity policy continues to be annuitant-driven.

. “The distinction of owner versus annuitant-driven annuities is without impact when the owner and annuitant are the same person” as the contractual death benefit would be “triggered regardless of whether the contract is annuitant or owner-driven.” (See Anderson at 130.)

. Whose article, Estate Planning with Nonqualified Annuities: Navigating the Labyrinth, the court has reviewed and cited herein.

. Who states he is an attorney, but, it is unclear whether or not Mr. Anderson is admitted to practice law in the State of New York.

. Indeed, the National Western policy could be owner-driven, or contain wholly different provisions than the Integrity policy.

. In fact, the court uncovered a similar type of bulletin from Integrity, which “reflects Integrity Life Insurance Company’s understanding of the current federal Tax Laws,” which takes the opposite position. In a January 13, 2009 “Annuity Advisors” article, when analyzing a situation where there is joint ownership, with the husband acting as the annuitant and the wife being the first to die, this article takes the position that the “Code deems . . . the death of the first joint owner to be the 72 (s) event. Wife’s estate would have to take 72 (s) distributions.”

. In Hawthorne, the Court of Appeals also held that an insurance contract and the proceeds paid from the insurance contract were personal property. (Id.) Annuities, while investments in the sense that an initial deposit enjoys tax-free accumulation during the term of the annuity contract, are defined under the Insurance Law. (See Insurance Law § 1113 [a] [2].) None *678 theless, annuities are not “a classic form of insurance.” CMatter of New York State Assn, of Life Underwriters v New York State Banking Dept., 83 NY2d 353, 364 [1994].)