07-1296-cv
Fred Spagnola v. The Chubb Corporation, et al.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: September 17, 2008          Decided: July 28, 2009)

Docket No. 07-1296-cv

------------------------------------------------------------x

FRED SPAGNOLA, individually, and on behalf of all those
similarly situated,

    Plaintiff-Appellant,

                              v.

THE CHUBB CORPORATION, FEDERAL INSURANCE COMPANY, GREAT
NORTHERN INSURANCE COMPANY, JOHN D. FINNEGAN AND THOMAS
F. MOTAMED,

    Defendants-Appellees.


------------------------------------------------------------x

Before:   WALKER, KATZMANN, and JOHN R. GIBSON,* Circuit Judges.

    Appeal from an order of the United States District Court for

the Southern District of New York (Harold Baer Jr., District

Judge) entered on March 27, 2007, granting Defendants-Appellees

Chubb Corporation's and related entities' motion to dismiss for

failure to state a claim upon which relief can be granted.

Plaintiff-Appellant Fred Spagnola brought a putative class action

claiming that the Chubb Corporation unlawfully increased his

---

    * The Honorable John R. Gibson, Circuit Judge, United States
Court of Appeals for the Eighth Circuit, sitting by designation.

homeowner's insurance premiums in violation of their insurance contract and New York Law. The district court granted Chubb's motion to dismiss all claims. We conclude, however, that Spagnola pled sufficient facts to state a claim for breach of contract and we therefore reverse the district court's dismissal of that claim. We affirm the court's dismissal of all other claims.

ROGER W. KIRBY (David Kovel, on the brief), Kirby McInerney & Squire, LLP, Kenneth Elan, Harold Edgar, New York, NY of counsel, for Plaintiff-Appellant.

KEARA M. GORDON, (Joseph G. Finnerty III, Sara Z. Moghadam, on the brief), DLA Piper US LLP, New York, NY and Washington, DC, for Defendants-Appellees.

JOHN R. GIBSON, Circuit Judge.

On July 13, 2001, Fred Spagnola and his wife purchased a Chubb Masterpiece homeowner's policy.[1] The policy provided dwelling coverage of $600,000, contents coverage of $300,000, and liability coverage of $500,000.

---

[1] Spagnola also named as defendants various affiliated entities and persons related to Chubb. For the purpose of this appeal we will refer to the named defendants-appellees collectively as "Chubb."

The Masterpiece policy allows the insured to select one of three types of coverage: extended replacement cost, verified replacement cost, or conditional replacement cost. Spagnola purchased the extended replacement coverage, which, in the event of an insurable loss, pays the cost of reconstruction even if that cost exceeds the stated coverage of the policy.[2] The policy defines "reconstruction cost" as the "amount required at the time of loss to repair or rebuild the house whichever is less, at the same location, with the same quality of materials and workmanship which existed before the loss."

The amount of coverage was listed in the policy's Coverage Summary and during each annual policy period, Chubb indicated that the coverage amount:

> will be increased daily to reflect the current effect of inflation. At the time of a covered loss, your amount of house coverage will include any increase in the United States Consumer Price Index from the beginning of the policy period.

The coverage amount could be changed:

> With your consent, we may change [the amount of coverage reflected in the coverage summary] when appraisals are conducted and when the policy is renewed, to reflect current costs and values.

The term "costs and values" is not further defined in the

---

[2] In contrast, a verified replacement cost policy covers the reconstruction cost up to a specified amount of coverage, and a conditional replacement cost policy covers a portion of the reconstruction cost up to a stated amount.

3

policy. Spagnola's policy originally had a one year policy period. Chubb, however, was obligated to renew the policy for three years and could decline to renew the policy "only on grounds for which [Chubb] could cancel it."[3] The policy also contained a conditional renewal provision. Under this provision, if Chubb had grounds to cancel or refuse to renew the policy, it could instead make continued coverage conditional on a change in policy limits or on eliminating any coverage not required by law.

As far as renewing coverage, the policy stated that at the time of renewal, Chubb "may offer to renew [the policy], at the premiums and under the policy provisions in effect at the date of renewal . . . by mailing [the insured] a bill for the premium . . . along with any changes in the policy provisions or amounts of coverage." If Spagnola did not pay the new premium, the policy would automatically terminate at the end of the current policy period. "Failure to pay the required renewal premium when due shall mean that you have not accepted our offer."

Over the next five years, Chubb annually increased Spagnola's coverage and likewise his premiums. The coverage amount for house and contents was increased each year by approximately ten percent, well in excess of the Consumer Price

_____

[3] Grounds for cancellation include such events as nonpayment of premium, conviction of a crime, or misrepresentation increasing the hazard assumed.

4

Index ("CPI"). Chubb sent the annual premium summary renewals with the bill for the next year's coverage describing it as an "annual premium savings." In 2006, Spagnola discovered that the increases in his premiums had risen faster than the CPI and he filed suit on behalf of a putative class, in state court, later removed to federal court, claiming that Chubb breached the terms of the policy and violated New York Insurance Law by improperly increasing coverage and premiums without his consent and in excess of the CPI. In addition, Spagnola brought an unjust enrichment claim as well as a deceptive business practices claim under New York General Business Law § 349. Chubb responded by filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

The district court granted Chubb's motion to dismiss all claims. First, the court held that the complaint failed to state a claim under New York Insurance Law § 3425 because the coverage adjustments at issue were properly made pursuant to a mechanism established in the policy. The court concluded that the policy established that the premium increases were tied to "current costs and values." The court concluded that the original policy notified Spagnola that Chubb had the right to increase coverage and premiums annually and that Spagnola's payment of the annual premium bill reflected Spagnola's consent to each such increase. The court also dismissed the breach of contract claim, both

5

because the contract terms upon which Spagnola relied "[did] not exist," and because the breach of contract claim was "barred by the voluntary payment doctrine." Finally, the court dismissed the deceptive business practices claim under New York law, holding that there were not sufficient facts to support a finding that the policy was "misleading in a material respect" or that Spagnola or any other member of the putative class was injured as a result. Spagnola now appeals.[4]

We review a Rule 12(b)(6) order of dismissal de novo. Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 343 (2d Cir. 2006). In reviewing such an order, we take all well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor to decide whether the plaintiff has pled a plausible claim for relief. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

I.

Spagnola first argues that the district court erred in dismissing his claim under New York Insurance Law § 3425.[5]

_____

[4] Spagnola does not appeal the district court's dismissal of his unjust enrichment claim.

[5] At oral argument we questioned whether this issue should be certified to the New York Court of Appeals. After reviewing New York case law and the opinions of the New York Insurance Department, we conclude that certification is unnecessary. But see Great N. Ins. Co. v. Mt. Vernon Fire Ins. Co., 143 F.3d 659, 662 (2d Cir. 1998) (certification appropriate where no state

6

Section 3425 restricts when and how an insurer may condition renewal or changes of limits or elimination of coverage. With respect to a "personal lines" insurance policy, such as this one, § 3425(e) provides: "[N]o notice of nonrenewal or conditional renewal of a covered policy shall be issued to become effective during the required policy period unless it is based upon a ground for which the policy could have been cancelled." N.Y. Ins. Law § 3425(e). The statute defines "required policy period" in this instance as "a period of three years from the date as of which a covered policy is first issued or is voluntarily renewed." Id. at § 3425(a)(7). Spagnola contends that, if Chubb wanted to change the limits of the policy, it was obligated under § 3425(d)(1) to issue a conditional notice that provided the "specific reason or reasons" for the changes. Id. at § 3425(d)(1). Since Chubb did not follow the notice requirement of § 3425(d)(1), Spagnola contends that any unilateral increases by Chubb violated the statute.

Spagnola's § 3425 argument is essentially twofold. First he argues that under the protections of § 3425 he was entitled to three years of continuous coverage unless he failed to pay the premiums due under the policy. See N.Y. Ins. Law § 3425(a)(7). He goes on to assert that Chubb could only increase his premiums and coverage during the three-year period by providing the

court decisions interpret relevant provision).

required notice and statement of reasons required by § 3425(d)(1). Spagnola concedes that under § 3425 an insurer may increase coverage limits (and premiums) during the three-year required policy period if the policy itself provides for an "automatic increase" or a "mechanism" to determine the increase, such as a predetermined figure or the CPI. Spagnola argues, however, that § 3425 bars the increases Chubb imposed because the policy did not provide for an automatic increase or specify a mechanism by which the increase could be measured. Spagnola alleges that the policy's provision permitting a change in the amount of coverage "when the policy's renewed to reflect current costs and values" is not a "mechanism" by which the increase could be measured because the insured cannot look to the policy itself to determine the amount of an increase which could be subject to the "whim" of the insurer.

Chubb and Spagnola agree that § 3425 permits an insurer to increase coverage limits (and therefore premiums) when the policy itself provides for such periodic increases. The two disagree on whether there is such a provision in this policy. Chubb characterizes the policy as an "inflation guard" policy which permits periodic coverage increases upon renewal to reflect current costs and values. In his complaint, Spagnola similarly characterizes the policy: "Annual premiums for replacement cost policies theoretically are based on the home's estimated

8

replacement cost, not its market value. These premiums are subject to limited annual cost increases, sometimes referred to in the industry as 'inflation guard coverage.'"

It is well established that we defer to an agency's construction of a statute when "the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices." N.Y. State Ass'n of Life Underwriters, Inc. v. N.Y. State Banking Dep't, 632 N.E.2d 876, 879 (N.Y. 1994) (quoting Kurcsics v. Merchants Mut. Ins. Co., 403 N.E.2d 159 (N.Y. 1980)). Several opinions from the New York Department of Insurance are instructive.

In a July 23, 2003 opinion, the Department unequivocally concluded that the three-year policy period requirement of § 3425 "[does] not have any effect upon the ability of the insurer to renew policies with a premium change, provided that the premium change conforms to its rate filing . . . ." Rate Changes and N.Y. Ins. Law § 3425, Office of Gen. Counsel, N.Y. Ins. Dep't, No. 03-07-38 (Jul. 23, 2003) (informal opinion). Chubb renewed the policy each year and the coverage increase at the time of renewal does not facially violate the three-year required policy period of § 3425(a)(7), nor does it run counter to the purpose behind § 3425. See Rosner v. Metro. Prop. & Liab. Ins. Co., 236 F.3d 96, 100 (2d Cir. 2000) (purpose behind § 3425 is "to provide a three-year period of renewability" and "to

9

establish guaranteed continuity of coverage") (internal quotation marks omitted).

As to the notice requirement, the Department considered a policy provision similar to the one here and concluded that no conditional renewal notice was required when a premium increase was due to the application of an inflation guard mechanism provided for in the policy. Conditional Renewal Notices, Office of Gen. Counsel, N.Y. Ins. Dep't, No. 02-04-10 (April 8, 2002) (informal opinion). The Department reasoned that no notice was required because the premium increase was attributable to the operation of the inflation guard "required by and set forth in the policy itself." Spagnola argues that this opinion actually supports his interpretation of § 3425 on two grounds. First, he states this is not an inflation guard policy so the Department opinion does not control. Spagnola distances himself from his initial characterization of the policy, stating in his reply brief that the clauses at issue are not "inflation guards as conventionally defined" because they do not "automatically adjust[] the coverage limit on the dwelling each time the policy is renewed to reflect current construction costs." Second, he contends that the Chubb policy is different in any event because its "costs and values" provision is not fixed or tied to a recognized index within the policy. Spagnola points to the Department's clarification in that opinion: "Had the increase in

10

coverage/premium not been solely attributable to a policy provision or a request by the insured, a conditional renewal notice would be required under the statute . . . ." Although this language is consistent with the conclusion that a conditional notice is not required when the policy provides for an annual increase, it does not affirmatively answer the question of whether the costs and values provision is a sufficient mechanism for increasing annual premiums upon renewal so as to negate the conditional notice requirements.

Two other Department opinions help to resolve this issue. In the first, the Department decided that a conditional renewal notice was not required under New York Insurance Law § 3426 (the commercial insurance counterpart to § 3425) because the increase was tied to a provision in the policy which required the insured to maintain coverage equal to the appraised value of the property. Conditional Renewal of Commercial Lines Insurance Policies, Office of Gen. Counsel, N.Y. Ins. Dep't, No. 9-9-96(#1) (Sept. 9, 1996) (informal opinion). The Department concluded that "appraised value," a term we believe is substantially similar to the "costs and values" term of Spagnola's policy, is a sufficient mechanism to provide the insured notice that the coverage amount will change on a periodic basis. While this opinion considers the provision of a commercial lines insurance policy and not a personal lines policy, the Department's

11

interpretation of a similar policy provision to the one in this case supports our conclusion that the conditional notice requirements do not apply to the renewals at issue here.

In contrast, another Department opinion decided that an increase in the amount of deductible expenses for windstorm coverage did require conditional notice under § 3425(d)(1). Conditional Renewal under § 3425(d)(1), Office of Gen. Counsel, N.Y. Ins. Dept., No. 06-08-17 (Aug. 24, 2006) (informal opinion). The Department based its conclusion on the fact that the "deductible in the original policy was fixed and was not subject to any provision that would provide for an automatic increase of any kind." Id. These opinions suggest that the determinative factor for the Department in deciding whether conditional notice requirements are necessary is whether the policy contemplates a periodic change in the policy's coverage or terms.

Here, the policy provided that Chubb could condition annual renewal on the payment of increased premiums based on current "costs and values," and thus, the conditional notice requirements of § 3425 are not triggered. That the increase cannot be specifically measured from the policy itself is not determinative. As the district court wrote: "An extended replacement cost policy is designed to keep pace with inflation and prevent underinsurance, and therefore, does not and for the insured's protection, cannot specify" the amount of the future

12

coverage increases in the original policy. Spagnola v. Chubb Corp., No. 06 CIV 9960, 2007 WL 927198, at *4 (S.D.N.Y. Mar. 27, 2007) (emphasis omitted).

We therefore affirm the district court's dismissal of Spagnola's § 3425 claim.

## II.

Spagnola next argues that the district court erred in dismissing his breach of contract claim. He claims that Chubb violated the insurance contract by: (1) not obtaining his consent to increase the amount of his coverage, and (2) increasing his coverage by an amount that does not reflect current costs and values.[6]

## A.

Spagnola contends that Chubb breached the insurance policy by failing to obtain his consent to the annual policy renewals. Spagnola states that his payment of the increased premiums did not amount to consent because the payment was not "knowing and voluntary." He complains that: (1) Chubb never told him that it was increasing his coverage; (2) Chubb never asked for his

[6] The complaint also asserted a third breach of contract claim, based on Chubb's alleged violation of § 3425, which Spagnola claims was incorporated by reference into the policy. However, because we conclude that Chubb did not violate § 3425, this claim also fails.

13

consent; (3) Chubb did not provide an explanation for the increased coverage; and (4) Chubb never told him the amount of the annual change in premiums and coverage.

We easily resolve this argument. First, the amount of coverage was shown in the coverage summary that Spagnola received with each reissue of the policy. This summary notified Spagnola that "[w]ith your consent, we may change this amount . . . when the policy is renewed, to reflect current costs and values." The policy provided that renewal each year would be at the premiums and under the policy provisions in effect on the date of renewal. It would be effectuated when Chubb mailed a bill for the premium "along with any changes in the policy provisions or amounts of coverage." The policy provided: "Failure to pay the required renewal premium when due shall mean that you have not accepted our offer." Thus, the offer was contained in each new policy reissue and coverage summary, and acceptance occurred if and when Spagnola paid the renewal premium. Each of these occasions resulted in a new contract between the parties, and Spagnola's payment was his consent.

Spagnola directs us to a New Jersey Supreme Court case from 1961 which held that "[a]bsent notification that there have been changes in the restrictions, conditions or limitations of [an insurance policy], the insured is justly entitled to assume that they remain the same and that his coverage has not in anywise

14

been lessened." Bauman v. Royal Indem. Co., 174 A.2d 585, 592 (N.J. 1961). We need not address the precedential value of Bauman, as there is nothing here to suggest that Spagnola was "entitled to assume" that the coverage amounts remained the same year to year. As the Bauman Court pointed out, an insured is "expected to [have] read" the restrictions, conditions and limitations in his original policy. Id. at 591-92. Spagnola does not dispute that the original policy included language permitting Chubb to adjust coverage amounts. In addition, Bauman involved an exclusion of insurance coverage that was added for the first time in a renewal policy with nothing to draw the insured's attention to such a change. See id. at 586. That is a different situation than a dispute centered around premium amounts that are always contained in a renewal notice.

We reject Spagnola's argument that the district court erred insofar as it dismissed the breach of contract claim based on lack of consent.

B.

Spagnola also claims that Chubb breached the insurance contract by increasing his coverage amounts and premiums in a way that did not reflect current costs and values. The policy does not define the term "current costs and values." According to

15

Spagnola, the policy could reasonably be interpreted to base costs and values on either actual reconstruction costs or the CPI. He alleges that Chubb breached this term by increasing the coverage amount without using either as a basis. Spagnola points out that his contents coverage increased at the same percentage rate as his dwelling coverage each year, and this automatic coupling alone supports an inference that Chubb increased coverage in a manner that did not accurately reflect current costs and values.

Chubb concedes that the premiums were not increased in an amount determined by the CPI. Chubb argues that this fact is irrelevant, and that it is to be expected that the increases would have exceeded the CPI because the CPI only applies to interim period adjustments, and not the annual increases at issue here. Chubb states: "No fact is pled to permit the inference that the increased coverage amounts were inconsistent with the reconstruction costs of the plaintiff's home in any of the last five years." Chubb characterizes Spagnola's home and contents comparison analysis as a "red herring" built on 'multiple layers of unreasonable assumptions." Chubb asserts that under Spagnola's interpretation of "costs and values," one assumes that contents and dwelling coverage must increase at different rates based on the additional assumption that the amount of contents coverage equals the sum of the value of each personal possession,

16

and that such an interpretation is inconsistent with industry practice and at odds with the policy terms.

Spagnola directs us to Beller v. William Penn Life Insurance Co. of N.Y., 778 N.Y.S.2d 82 (App. Div. 2004). The plaintiff in Beller purchased a life insurance policy that set out a number of factors the insurer would evaluate in setting premiums to maintain the policy's coverage. Id. at 84. After paying the premiums for several years, the insured realized that the insurer was determining premiums on a basis different than the one required by the policy's language. Id. The court suggested in dicta that the insured's allegations, if true, constituted a breach of contract as well as a deceptive business practices claim. Id. at 85-86. The reasoning of Beller convinces us that Spagnola's breach of contract claim should survive a motion to dismiss. Chubb's explanation that the fixed proportion of home and contents coverage is standard industry practice does not address Spagnola's allegation that the annual increases were not based on current costs and values as required by the express terms of the policy. Cf. id. at 85 (insurer's customary filed rates do not insulate insurer from contract claim). Chubb does not tell us the basis for its costs and values determination, but only tells us what the calculation is not based on. Chubb's explanation neither resolves the ambiguity of the term "current costs and values" nor adequately refutes Spagnola's claim that

17

the increases were not based on current costs and values. Spagnola has therefore met the standard necessary to resist Chubb's motion to dismiss. See Iqbal, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

III.

The district court dismissed Spagnola's breach of contract claim on the alternative ground that the claim was barred by the voluntary payment doctrine. According to the doctrine, a breach of contract claim is barred if a party continues to pay amounts charged under the contract without objection. The district court found that Spagnola had full knowledge of the facts regarding coverage and premiums at the time of his first renewal in 2002 and continued (without objection) to pay the increased premium amounts on each of the five succeeding anniversary dates. The district court reasoned: "It is a little late now, after [Spagnola] has enjoyed the benefits and protections of [Chubb's] coverage for more than five years," to challenge the "propriety of [his] coverage." Spagnola, 2007 WL 927198, at *3.

The voluntary payment doctrine precludes a plaintiff from recovering payments "made with full knowledge of the facts" and with a "lack of diligence" in determining his contractual rights and obligations. See Dillon v. U-A Columbia Cablevision of Westchester, Inc., 740 N.Y.S.2d 396, 397 (App. Div. 2002); see

18

also <u>Westfall v. Chase Lincoln First Bank, N.A.</u>, 685 N.Y.S.2d 181, 182 (App. Div. 1999); <u>Gimbel Bros., Inc. v. Brook Shopping Ctrs., Inc.</u>, 499 N.Y.S.2d 435, 438 (App. Div. 1986). The doctrine does not apply, however, when a plaintiff made payments under a mistake of fact or law regarding the plaintiff's contractual duty to pay. See <u>Dillon</u>, 740 N.Y.S.2d at 397; <u>Gimbel</u>, 499 N.Y.S.2d at 438.

Spagnola claims that the voluntary payment doctrine does not apply because he did not have full knowledge of the facts relevant to his claim until he filed suit in 2006, and that his lack of full knowledge was not due to a lack of diligence, but instead due to being misled by Chubb as to the basis upon which his coverage was increased. He points to, among other things, renewal notices which stated that he was receiving an "annual premium savings."

Chubb points out that Spagnola renewed his policy five times, and that "simple math" should have alerted Spagnola to the notion that the increases were not based on the CPI as Spagnola thought. In <u>Dillon</u>, a cable customer brought a putative class action seeking to recover five-dollar late fees paid to her cable company over the course of seven years. 740 N.Y.S.2d at 397. The cable company represented that the fee was an administrative fee reflecting costs it incurred from the "customers' late payments or non-payments." <u>Id.</u> (internal quotation marks omitted). The plaintiff alleged that the fee substantially

19

exceeded the cable company's true cost for a late or non-payment and instead constituted an improper penalty. Id. The trial court granted the cable company's motion to dismiss based on the voluntary payment doctrine, concluding that the customer should have known that the five-dollar charge might be excessive simply because it constituted 19% of her total bill. Id. at 398. The Appellate Division affirmed. Id.

Although the voluntary payment doctrine may ultimately bar Spagnola's breach of contract claim, we decide that it is too early in this case to conclusively answer that question. In some years, Chubb sent Spagnola a renewal letter enclosing the policy and stating that Spagnola was receiving an "annual premium savings," even while it increased his premiums. See Samuel v. Time Warner, Inc., 809 N.Y.S.2d 408, 418 (Sup. Ct. 2005) (voluntary payment doctrine not applicable when claim predicated on lack of full disclosure). Chubb does not argue that the increases were such that Spagnola should have been on notice that they were not based on current costs and values. Cf. Dillon, 740 N.Y.S.2d at 397 (customer should have known based on degree of increase). The pleadings before the district court do not establish whether Spagnola knew or should have known that the increased amounts were not based on current costs and values, and Spagnola was not required to preemptively plead facts refuting the voluntary payment doctrine. See Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007) (not required to include facts in

20

complaint in anticipation of affirmative defense).  Thus, drawing all reasonable inferences in Spagnola's favor, we conclude that the voluntary payment doctrine cannot stand at this time as an alternate basis for dismissal of Spagnola's claim.

The cases cited by Chubb do not change our view that the complaint cannot be dismisssed based on the voluntary payment doctrine.  In Gimbel, the appellate court held that the plaintiff could not receive restitution for certain payments made pursuant to a mistake of fact when the record showed that "no mistake of fact had been made."  499 N.Y.S.2d at 438.  In that case, the plaintiff sought to recover certain extra rent payments it had made to its landlord for a year and a half.  The court determined that although the lease did not require the extra rent payments, the plaintiff's recovery was barred by the voluntary payment doctrine.  Because the plaintiff made the improper rent payments for a year and a half before questioning them, it "displayed a marked lack of diligence in determining what its contractual rights were, and is therefore not entitled to the equitable relief of restitution."  Id. at 439.  In Gimbel, however, the judgment was entered denying plaintiff's claim after discovery and a bench trial, not on the basis of plaintiff's complaint. Id. at 436-37; see also Lavin v. Town of E. Greenbush, 843 N.Y.S.2d 484, 491-92 (Sup. Ct. 2007) (applying voluntary payment doctrine on summary judgment motion).

IV.

Finally, Spagnola appeals the district court's dismissal of his deceptive business practices claim under § 349 of the New York General Business Law.

To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result. Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam). "Deceptive practices" are "acts which are dishonest or misleading in a material respect." Kramer v. Pollock-Krasner Found., 890 F. Supp. 250, 258 (S.D.N.Y. 1995). "'Deceptive acts' are defined objectively[] as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." Boule v. Hutton, 328 F.3d 84, 94 (2d Cir. 2003) (internal quotation marks omitted).

The district court dismissed Spagnola's claim because it failed to plead either a deceptive act or requisite injury. Although a monetary loss is a sufficient injury to satisfy the requirement under § 349, that loss must be independent of the loss caused by the alleged breach of contract. For example, in Sokoloff v. Town Sports Int'l, Inc., 778 N.Y.S.2d 9, 10 (App. Div. 2004), the Appellate Division dismissed a health club member's deceptive practice claim made against her health club. The member sought the return of her initiation fee. Id. The court held that the member did not claim a sufficient injury

22

because she alleged no other loss besides the payment of her membership fee. Id. She did not claim that the health club failed to deliver services called for under the contract and "she never sought to cancel the contract." Id.; see also Small v. Lorillard Tobacco Co., 720 N.E.2d 892, 897-98 (N.Y. 1999) (injury must be separate and distinct from the deceptive act).

Here, as in Sokoloff, Spagnola does not claim that he did not receive adequate insurance coverage or that he did not contract for the coverage he received. Cf. Samuel, 809 N.Y.S.2d at 418 (requisite injury established when plaintiffs received services never contracted for). Spagnola has therefore failed to plead a sufficient injury under New York General Business Law § 349.

For the foregoing reasons, we reverse the district court's dismissal of Spagnola's breach of contract claim and affirm the district court's dismissal of all other claims.[7] We remand the case to the district court for further proceedings consistent with this opinion.

---

[7] We also deny as without merit Spagnola's calim that the district court's failure to consider certain authority "warrant[s] reassignment" of his case to a different judge.