OPINION OF THE COURT
Chief Judge Kaye.
At issue on this appeal is the statutory authority of the Landmarks Preservation Commission to landmark the interior of the Four Seasons restaurant in Manhattan.
Appellant, Teachers Insurance and Annuity Association of America (TIAA), owner of the building that houses the restaurant, argues that the Commission has exceeded its authority under the New York City Landmarks Law in that the requisite public openness is lacking; the designation impermissibly restricts future use of the space; and even if valid, the designation improperly includes certain interior furnishings. Concluding that these arguments lack merit, we affirm the Appellate Division order dismissing appellant’s challenges.
I.
In 1959, the Four Seasons restaurant opened on the first two floors of the newly constructed Seagram Building on Park Avenue in New York City. The building, designed by the *40 German architectural master Ludwig Mies van der Rohe, is the sole example of his work in New York City. The celebrated American architect Philip Johnson, who assisted Mies van der Rohe in the building design, created the restaurant interior. Both the building exterior and the restaurant interior — which reflects and complements the building’s modular design and architectural innovation — have been acclaimed as quintessential expressions of the International style. No one disputes their special historical and aesthetic interest.
When TIAA purchased the building from Joseph E. Seagram & Sons in 1980, the portions of the ground and first floors occupied by the restaurant were subject to a 25-year lease that will expire in 1999. By agreement with Seagram, appellant must use its best efforts to continue to lease the space for restaurant use. If it cannot, Seagram has an option until 2025 to find a suitable restaurant tenant. TIAA also agreed to propose the building for landmarking when it became eligible.
In December 1987, appellant proposed the designation of the Seagram Building, including the building lobby and outdoor plaza. Prior to the public hearings before the Commission, and without consulting appellant, the restaurant operators themselves proposed to the Commission that the restaurant interior also be considered for landmark status. The Commission then added that proposal to the calendar and in May and July 1988 conducted public hearings.
Dozens of witnesses and letters before the Commission from prominent architects, artists, community leaders and others supported the designation of the Four Seasons interior. TIAA, several commercial real estate interests and architect Paul Byard opposed the designation.
In October 1989, the Commission unanimously landmarked the building, outdoor plaza, building lobby and the Four Seasons interior. Noting the particular architectural features of the restaurant, including its distinctive design, integral relation to the building architecture and innovative use of new technologies, the Commission found that the restaurant interior "has a special character, special historical and aesthetic interest and value as part of the development, heritage and cultural characteristics of New York City” and that "the Interior is one which is customarily open and accessible to the public, and to which the public is customarily invited.” The restaurant designation accords landmark status to the en *41 trance lobby, Grill Room, Pool Room and balcony dining rooms, and includes the marble pool, walnut bar, wall surfaces, floor surfaces, ceiling surfaces, doors, railings, metal draperies and two hanging metal sculptures commissioned by Johnson from the artist. The Board of Estimate, after its own public hearings, approved those designations.
Appellant sought to vacate the restaurant designation by a combined CPLR article 78 proceeding challenging the Commission’s statutory authority and plenary action alleging an unconstitutional taking and impairment of free expression. The trial court dismissed the proceeding in its entirety, and the Appellate Division affirmed. In this Court, TIAA limits its appeal to the statutory grounds, no argument having been made regarding the dismissal of its constitutional challenges. We now affirm.
II.
Responding to the loss of a number of its more significant buildings, New York City in 1965 enacted its first historic preservation statute (Administrative Code of City of NY ch 8-A [now tit 25, ch 3]; see, Pyke, Landmark Preservation, at 15 [1969]) for the "protection, enhancement, perpetuation and use of improvements and landscape features of special character or special historical or aesthetic interest or value” (Administrative Code § 25-301 [b]). In 1973, the Landmarks Law was amended to expand the Commission’s jurisdiction by authorizing designation of interior landmarks and by charging the Commission with promoting the use of interior landmarks "for the education, pleasure and welfare of the people of the city” (Administrative Code § 25-301 [b] [g]). This case presents our first opportunity to review application of the Landmarks Law to an interior landmark designation, although the appeal is limited to the Commission’s statutory authority, in three particular respects, to landmark the Four Seasons interior.
A landmark designation is an administrative determination, ordinarily reviewable under article 78, that must be upheld if it has support in the record, a reasonable basis in law, and is not arbitrary or capricious (Lutheran Church v City of New York, 35 NY2d 121, 128, n 2).
 Where interpretation of statutory terms is involved, two standards of review are applicable. As the agency charged with implementing the Landmarks Law, the Commission is presumed to have developed an expertise that requires us to *42 accept its interpretation of that law if not unreasonable (see, Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459). Such deference to the Commission, however, is not required where the question is one of pure legal interpretation (see, Matter of Moran Towing & Transp. Co. v New York State Tax Commn., 72 NY2d 166, 173). The distinction between these standards is perhaps best understood by reference to the statutory term "special historical or aesthetic interest” — as to which courts should defer to the expertise of the Commission — and the jurisdictional predicate "customarily open or accessible to the public” — a matter of pure legal interpretation as to which no deference is required.
Public Openness Requirement
The Commission is authorized to landmark an interior 30 or more years old that is "customarily open or accessible to the public, or to which the public is customarily invited, and which has a special historical or aesthetic interest or value as part of the development, heritage or cultural characteristics of the city, state or nation” (Administrative Code § 25-302 [m]; § 25-303 [a] [2]). We agree with appellant that the meaning of customary public openness — essential to the Commission’s jurisdiction — is a law question for the courts rather than one of administrative expertise.
TIAA’s principal argument is that the Landmarks Law must be read to require that interiors subject to landmarking have a "distinctively public character” to bring them within the Commission’s jurisdiction. An "ordinary commercial space” that has not been dedicated to public use, TIAA argues, cannot be landmarked over the owner’s objection.
At the outset, we note that nothing in the Landmarks Law requires an owner’s consent as a prerequisite to designation. While other jurisdictions have required owner consent (see, 11 Boasberg, Coughlin and Miller, Historic Preservation Law and Taxation § 7.03 [7] [b] [iv]), the New York City legislature, significantly, has not. Administrative Code § 25-313 (a) provides only that the owner is entitled to notice of the public hearing, and indeed, failure to give such notice does not invalidate a designation. So long as the statutory criteria are satisfied, the Commission may make a valid designation over an owner’s objection (see, Pyke, Landmark Preservation, at 20-22 [1969]).
Underscoring the burdens a landmark designation places on *43 property owners (see, e.g., Administrative Code §§ 25-305 — 25-311, 25-317; 11 Boasberg, Coughlin and Miller, Historic Preservation Law and Taxation § 7.03 [8]-[ll]), and therefore urging "strict construction” of the statute, TIAA asks us to distinguish between a restaurant and "inherently” public interiors, such as railroad stations, lobbies and theaters, which are intrinsically dedicated to public use by their public assemblage purpose. Appellant asserts that the Four Seasons interior has no distinctively public purpose, pointing out that Seagram had considered such uses as an automobile showroom and art gallery before outfitting the space to accommodate the restaurant, and that permitting designations such as this will adversely impact the real estate and economy of New York City.
We reject TIAA’s asserted distinction, which on its face is a difficult one. No less than a theater, which generally requires a ticket for public entry, a restaurant by the very nature of its business invites the general public to enter (see, Weinberg v Barry, 634 F Supp 86, 93 [D DC]). But even if we might agree that it would be prudent policy to adopt the distinction appellant suggests, the argument suffers a more fundamental flaw: the proffered distinction is nowhere part of the unambiguous statute we are obliged to enforce as the City legislature has written it (see, e.g., Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 674-675).[1]
The threshold requirement prescribed by the legislature is that an interior be "customarily open or accessible to the public, or [a place] to which the public is customarily invited.” The crux of this provision is customary openness, accessibility, invitation to the public — words that are readily understood to require usual, ordinary or habitual (rather than rare or occasional) availability to the general public. The legislature did not also specify that an interior must be intended as a place of assemblage — adding an additional dimension to customary public availability — as it might well have done if that were the intention. Consistent with the letter and purpose of the Landmarks Law, the relevant inquiry thus becomes an objective one of whether the interior is habitually open or accessi *44 ble to the public at large. An interior to which the general public is usually invited, regardless of its intended purpose, falls within the ambit of the statute.
TIAA argues, additionally, that although currently open to restaurant customers, the restaurant interior should be beyond the Commission’s jurisdiction because it can be adapted to private use in the future. The simple answer is that any structure, even a railroad station, can be converted to private use in the future; that potential cannot preclude the land-marking of appropriate interiors (see, Note, American Heritage at Stake: The Government’s Vital Interest in Interior Landmark Designations, 25 New Eng L Rev 291, 321-322 [1990]).
Applying this interpretation, unquestionably the Commission’s determination that the Four Seasons "customarily” invites the public is not arbitrary or capricious. The restaurant interior having been provided for the enjoyment of New York City’s residents and visitors since it opened more than three decades ago, the Commission now may seek to preserve it for others (see, Administrative Code § 25-301 [b]).
Future Use Restriction
The Commission is expressly forbidden to use its powers "to regulate and restrict the locations of trades and industries or location of buildings designed for specific uses” (Administrative Code § 25-304 [a]). This limitation on the Commission’s jurisdiction has been read as a prohibition against the use of landmark designations for zoning purposes (see, Shubert Org. v Landmarks Preservation Commn., 166 AD2d 115, 121, appeal dismissed 78 NY2d 1006, lv denied 79 NY2d 751, cert denied — US —, 112 S Ct 2289).
Appellant’s argument for a limitation on the Commission’s jurisdiction is a somewhat different one: that the Commission has violated the statutory proscription by including in the designation items that purportedly render the space unusable for any other purpose, pointing in particular to the walnut bar and marble pool.[2] Whether or not the statute should be so read, we agree with the conclusion reached by the Appellate Division that TIAA did not establish its contention that the space will be unusable for other purposes.
*45 Designated Interior Items
Even if the designation was authorized, appellant argues, items appurtenant to the interior of the restaurant cannot properly be included in the designation. We find no such limitation in the Landmarks Law.
The City does not challenge appellant’s assertion that the Commission’s jurisdiction over interior landmark designations extends only to "interior architectural features,” defined as the "architectural style, design, general arrangement and components of an interior, including, but not limited to, the kind, color and texture of the building material and the type and style of all windows, doors, lights, signs and other fixtures appurtenant to such interior” (Administrative Code § 25-302 [l]). Emphasizing the word "other,” appellant argues that the Commission’s jurisdiction extends only to items that qualify as fixtures at common law, and it specifically challenges designation of the hanging sculptures, walnut bar, metal draperies, decorative metal railings and ceiling panels.
We need not pass on whether the designated items are fixtures because the Landmarks Law does not limit the Commission’s jurisdiction to fixtures. The language of the statute unambiguously states that interior architectural features are composed of the "architectural style, design, general arrangement and components of an interior” (Administrative Code § 25-302 [l]). We agree with the Appellate Division’s construction of the statute that, in authorizing the Commission to designate items appurtenant to an interior, the legislation does not distinguish between personalty and realty.
We defer to the expertise of the Commission in its application of the provision (see, Kurcsics, 49 NY2d, at 459). The Commission found that each of the designated items was created and installed at Philip Johnson’s direction as an integral element of the design of the interior. Other items specially created or chosen for the restaurant, although mentioned in the designation report, were not designated by the Commission. As demonstrated by the items chosen for designation, the Commission has drawn a rational distinction between items integral to the design of the interior space, and items that merely enhance the restaurant’s ambiance. We conclude that the Commission’s interpretation is not unreasonable and thus that the Commission did not exceed its authority by including the designated items. Moreover, we agree with the Appellate Division that the Commission’s decision to include *46 the designated items is supported by the record and not arbitrary or capricious and thus was within the proper exercise of the Commission’s discretion (see, Lutheran Church, 35 NY2d, at 128, n 2).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Simons, Titone, Hancock, Jr., and Bellacosa concur; Judges Smith and Levine taking no part.
Order affirmed, with costs.

. Appellant alternatively urges consideration of the legislative history, but points to no legislative history establishing its suggested distinction. Moreover, because the Landmarks Law is clear on its face, we need not look to the agency’s prior practice in applying the statute (see, e.g., Doctors Council, 71 NY2d, at 674-675; see also, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 128, 129).

. Appellant also protests designation of the wine cellar visible from the restaurant lobby, but the wine cellar is not included in the actual designation.