*442 Order, Supreme Court, New York County (Marilyn Shafer, J.), entered July 8, 2008, which denied the petition seeking to vacate the nullification by respondent Department of Citywide Administrative Services (DCAS) of petitioner’s test scores and disqualification from the civil service eligibility list for promotion to police captain, and the refusal of respondent Civil Service Commission (CSC) to hear petitioner’s appeal therefrom, unanimously reversed, on the law, without costs, the petition granted to the extent of vacating the determination of CSC that it lacked jurisdiction to consider petitioner’s appeal, and the matter remanded for further proceedings consistent herewith.
Petitioner is a member of the New York City Police Department; he joined the force in 1995 and was promoted to lieutenant in 2003. In May 2006 petitioner took an exam administered by DCAS, exam number 5535, to become a captain. Approximately one month later, petitioner attended a “protest review session” held by DCAS, at which those who took exam number 5535 were given the opportunity to review the exam questions and the proposed model answers and submit challenges to one or more such answers. Instructions given to petitioner at the protest review session provided that to challenge a model answer, the candidate was required to: (1) write the number of the relevant question; (2) “state the question”; and (3) explain why the answer provided by the candidate was “as good or better than the proposed [model] answer.” Candidates could submit challenges to the answers at the session itself or within 30 days of it. Each candidate at the protest session was instructed that, prior to leaving the session, “[y]ou must turn in all of the examination material, your protests, your scrap paper, the proposed answer key, and any notes you may have prepared.”
According to petitioner, he reviewed the instructions regarding the manner in which answers must be challenged and the instructions requiring the candidates to turn in all exam materials prior to leaving the session, and perceived a contradiction *443 between those two sets of instructions. Specifically, petitioner was confused as to how a candidate could challenge an answer after leaving the session (but within the 30-day window provided by DCAS) when the candidate was required to “state the question” but apparently could not leave the session with the questions. Thus, if a candidate were precluded from leaving the session with the questions but required to state verbatim the question he or she wished to challenge, then the right to make challenges after the session would be difficult, if not impossible, to exercise. Petitioner therefore asked a proctor at the session whether the question had to be stated verbatim in a challenge to the question submitted after the session. The proctor allegedly told petitioner that regardless of whether the challenge was made during or after the session, the candidate was required to restate the question verbatim. Because petitioner wanted to challenge three questions after the session, he wrote those questions inside a reference book that he brought to, and was permitted to have at, the session.
Several weeks after the protest session (but within the 30-day period) petitioner mailed to DCAS his challenges to the three questions that he had written in his reference book. He also visited a Web site on which civil servants discuss civil service exams and posted the questions on the site. Thereafter, in September 2006, DCAS released the eligibility list for the position of captain; petitioner ranked 13th on that list.
By notice dated December 8, 2006, DCAS informed petitioner that, based on information gathered by the New York City Department of Investigation (DOI) regarding his challenges to the test questions, it was charging him with, among other things, violations of Civil Service Law § 50 (11) (d) and (g)[1] because he wrote the questions in his reference book thereby taking them out of the protest session and posted the questions on the Internet. Under the “Preliminary Findings” section of the notice, DCAS advised petitioner that it had made the following preliminary findings:
*444 “(1) [petitioner] engaged in the alleged conduct;
“(2) in engaging in th[e] conduct, [petitioner] violated . . . Civil Service Law Section 50 (11) (d), in that [he] had in [his] possession questions and answers relating to the administration of Exam 5535 without authorization from an appropriate authority, and, in fact, in direct violation of instructions provided to [him] in [his] invitation to attend the protest session and the Instructions to Candidate form [he] received at the protest session;
“(3) in engaging in this conduct, [he] violated . . . Civil Service Law Section 50 (11) (g), in that [he] disclosed to persons the questions to Exam No. 5535 while [that exam] was continuing to be administered to candidates; . . .
“(4) in engaging in this conduct, [he] violated Regulation E.16.1 of the GER’s, in that [he] cheated on an examination.
“(5) these violations require that [he] be disqualified from participation in Exam No. 5535, Promotion to Captain, pursuant to Civil Service Law Section 50 (11).”
Petitioner, who had cooperated with DOI in its investigation, acknowledged readily that he had written the three questions in his reference book, left the protest session with the book, and used the questions to challenge the model answers to those questions. He also acknowledged posting the questions on the Internet. Petitioner explained, however, that he wrote the questions in his book because he wanted to comply with the instruction requiring a candidate to state verbatim the question he or she was challenging. He also explained that he posted the questions on the Internet because many members of the New York City Police Department post material related to civil service exams on the Web site and none of the instructions he read prohibited doing so.
On June 4, 2007, DCAS issued its determination, concluding that petitioner violated Civil Service Law § 50 (11) (d) and (g), nullifying petitioner’s exam results, and deleting petitioner’s name from the eligibility list for promotion to the rank of captain. By letter dated August 14, 2007, the Deputy Commissioner of DCAS rejected petitioner’s administrative appeal from the June 4, 2007 determination. Petitioner attempted to take a further administrative appeal to respondent CSC, but by a determination, dated November 20, 2007, CSC held that it did not have jurisdiction to consider the appeal. CSC stated that it “ha[d] conducted a review of the documents submitted by both sides and . . . determined that [it] does not have the requisite jurisdiction to hear the . . . appeal as it does not fall within the enumerated determinations set forth in City Charter 813 as *445 reviewable by th[e CSC].” Thereafter, petitioner commenced the instant action pursuant to CPLR article 78 challenging CSC’s determination. Supreme Court denied the petition, finding that CSC’s interpretation of New York City Charter § 813 (d) was entitled to deference since it was neither irrational nor unreasonable.
Petitioner argues, among other things, that CSC’s determination that it did not have jurisdiction to hear his appeal from DCAS’s final determination was erroneous as a matter of law and that the matter should be remanded to CSC for consideration of his appeal. Respondents counter that CSC’s determination as to whether it has jurisdiction to hear an appeal is entitled to great deference and should not be disturbed.
NY City Charter § 813 (d) states: “The civil service commission shall have the power to hear and determine appeals by any person aggrieved by any action or determination of the commissioner [of DCAS] made pursuant to paragraphs three,- four, five, six, seven and eight of subdivision a or paragraph five of subdivision b of section eight hundred fourteen of this chapter and may affirm, modify, or reverse such action or determination.” NY City Charter § 814 (a) (6), in turn, provides:
“The commissioner [of DCAS] shall have the following powers and duties . . .
“(6) To investigate applicants for positions in the civil service; to review their qualifications, and to revoke or rescind any certification or appointment by reason of the disqualification of the applicant or appointee under the provisions of the civil service law, and the rules of the commissioner or any other law.” Accordingly, CSC has jurisdiction over an appeal from any person aggrieved by a determination of DCAS revoking or rescinding any certification by reason of the disqualification of the person under the Civil Service Law.
Critical to the disposition of this appeal is whether CSC’s determination dismissing petitioner’s appeal for want of jurisdiction is entitled to deference. “Where interpretation of statutory terms [by an administrative agency] is involved, two standards of review are applicable” (Matter of Teachers Ins. & Annuity Assn. of Am. v City of New York, 82 NY2d 35, 41 [1993]). Thus, “Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. If its interpretation is not irrational or unreasonable, it will be upheld. Where, however, the question is *446 one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980] [citation omitted]). In ascertaining whether an administrative agency’s interpretation of a statute is entitled to deference, the court should focus on “the extent to which the interpretation relies upon the special competence the agency is presumed to have developed in its administration of the statute” (Matter of Gruber [New York City Dept. of Personnel—Sweeney], 89 NY2d 225, 231 [1996]) and the extent to which “the language used in the statute is special or technical and does not consist of common words of clear import” (Matter of New York State Assn. of Life Underwriters v New York State Banking Dept., 83 NY2d 353, 360 [1994]).
Here, no deference should be accorded CSC’s determination. The language used in NY City Charter § 813 (d), above quoted, is plain and involves no special or technical words. Similarly, NY City Charter § 814 (a) (6) employs common words of clear import in vesting DCAS with the power “to revoke or rescind any certification ... by reason of the disqualification of the applicant . . . under the provisions of the civil service law.” Here too, interpretation does not depend in the slightest on the knowledge and understanding of the practices unique to CSC or that body’s evaluation of factual data (see Roberts v Tishman Speyer Props., L.P., 62 AD3d 71 [2009]). Rather, interpretation of these NY City Charter provisions requires “statutory reading and analysis, dependent only on accurate apprehension of legislative intent” (Gruber, 89 NY2d at 231-232). Therefore, “[we] need not accord any deference to the agency’s determination, and [we are] free to ascertain the proper interpretation from the statutory language and legislative intent” (id.).
DCAS disqualified petitioner, an applicant for a promotion, from eligibility for the promotion by revoking his certification on the list of eligible applicants (see NY City Charter § 814 [a] [6]) and did so “under the provisions of the civil service law” (id.), namely Civil Service Law § 50 (11). DCAS’s determination therefore fell within the plain and ordinary meaning of NY City Charter § 814 (a) (6), which provides DCAS with the power “to revoke or rescind any certification ... by reason of the disqualification of the applicant. . . under the provisions of the civil service law” Because DCAS made a determination pursuant to section 814 (a) (6) that aggrieved petitioner, CSC has the *447 power under section 813 (d) to hear and determine his appeal, and may affirm, modify, or reverse that determination.[2]
In light of our conclusion that CSC erred in refusing to hear petitioner’s appeal, we need not address petitioner’s remaining contention. Concur—Saxe, J.P., Buckley, McGuire, DeGrasse and Freedman, JJ.

. Civil Service Law § 50 (11) lists unlawful acts with respect to examinations administered pursuant to the Civil Service Law. Paragraph (d) of that subdivision proscribes an applicant from “[h]av[ing] in his or her possession any questions or answers relating to any such examination, or copies of such questions or answers, unless such possession is duly authorized by the appropriate authorities”; paragraph (g) states that an applicant may not “[d]is-close or transmit to any person the questions or answers to such examination prior to its administration, or destroy, falsify or conceal the records or results of such examination from the appropriate authorities to whom such records are required to be transmitted in accordance with this chapter, unless duly authorized to do so by the appropriate authorities.”

. Although not raised by the parties, it is worth noting that DCAS’s regulation E.16.1, codified at 55 RCNY 11-01 (p) and made applicable to all examinations conducted by DCAS (55 RCNY 11-01 [a] [1]), which petitioner is also alleged to have violated, appears to provide an additional basis for CSC’s jurisdiction.