OPINION OF THE COURT
Lynn R. Kotler, J.
This is a CPLR article 78 proceeding which arises from a building owner’s plan to convert an interior landmark to private residential use. Petitioners seek, inter alia, a judgment annulling respondent New York City Landmarks Preservation Commission’s grant of a certificate of appropriateness (COA) which allows respondent Civic Center Community Group Broadway LLC (the owner), the owner of the building at 346 Broadway, also known as 108 Leonard Street in Manhattan (the building), to perform certain work at the building. Petitioners maintain that this work will “permanently alter the previously-pristine and unaltered 1897 landmark Clock, converting it from a historic, one-of-a-kind mechanical clock . . . into a standard modern-day electric clock.”
Petitioners further seek declarations that: (1) the grant of the COA was “tantamount to a rescission in violation of lawful *285 procedure”; (2) an application for exclusive private use of an interior landmark cannot properly be the subject of an appropriateness review; and (3) the Commission has the power to require the respondents to keep the tower clock operable and mechanical, to keep the clock serviced and maintained, and to keep the clock tower suite (hereinafter defined) open to the public. The parties have previously agreed to limit the scope of this litigation to only issues pertaining to the clock tower suite. Finally, petitioners seek an order enjoining the respondents, their employees, agents, successors, etc., from denying public access to the clock tower suite, from dismantling, disassembling, de-mechanizing, and/or electrifying the clock, and directing respondents to maintain the clock tower suite and the clock in good condition and repair.
Petitioners style themselves as a coalition composed of the following entities and individuals. Save America’s Clocks, Inc. (SAC) preserves and maintains America’s public clocks. The Historic Districts Council, Inc. is a nonprofit dedicated to preserving the City’s historic neighborhoods and buildings.
Tribeca Trust, Inc. is another nonprofit which seeks “to educate the public about Tribeca’s history and architectural heritage and to protect and enhance its architectural character.” The individual petitioners are Marvin Schneider, Forest Markowitz, Thomas Bernardin, Christopher DeSantis, Jeremy Woodoff and Alanna Heiss. Mr. Schneider is the City’s official clock master. Mr. Markowitz is an assistant clock master. Mr. Bernardin is founder and president of SAC. Mr. DeSantis is a horological expert. Mr. Woodoff is a member of SAC’s Board of Directors and is a City Planner presently employed in the Historic Preservation Office of the City’s Department of Design and Construction. Finally, Ms. Heiss, operating through The Institute for Art and Urban Resources, established an exhibition and artist studio program in the clock tower suite from 1972 until 2013.
There are three groups of respondents: (1) the owner; (2) The Peebles Corporation, 346 Broadway LLC, El Ad US Holding, Inc., El Ad 346 Development LLC and Beyer Blinder Bell, Architects and Planners, LLP (BBB); and (3) the City of New York, Office of the Deputy Mayor for Housing and Economic Development, New York City Department of Buildings and the Commission. Respondents have answered the petition and oppose the relief requested. The court’s decision follows.
*286 Facts and Arguments
The Clock and Clock Tower Suite
This petition concerns the landmark 1897 E. Howard Watch & Clock Company’s No. 4 Striking Tower Clock, one of the few remaining mechanical public tower clocks in the country (the clock). The clock is situated within a suite of rooms (the clock tower suite) in a tower perched atop the landmark former New York Life Insurance building. The building itself was constructed between 1894 and 1898 and is described in the Commission’s February 10, 1987 designation list 187 LP-1513 (the 1987 designation) as “[a] monumental freestanding skyscraper in the neo-Italian Renaissance style” (the 1987 designation at 1). New York Life Insurance moved out of the building in or about 1928. The building was subsequently acquired by the City in 1968 and housed various city agencies and offices.
The clock tower suite consists of four floors, beginning at the fourteenth floor of the building. Until 2013, the fourteenth floor was used as an art gallery and contains a spiral metal staircase which leads to a landing where the pendulum of the clock is situated and continues to the fifteenth floor clock tower machinery room. The clock tower suite further consists of a small sixteenth floor containing the clockworks and clockfaces and a seventeenth floor belfry, containing the clock’s 5,000-pound bell and hammer. The 1987 designation describes the clock as follows:
“The clock had fallen into disrepair and was restored in 1980 by Marvin Schneider and Eric Reiner, city workers who devoted their spare time to the project. With their colleague George Whaley, they rewind the clock each week. . . . The clock is one of the few remaining in New York which has not been electrified” (the 1987 designation at 13).
On May 25, 1989, a notice of designation was recorded with the City Register which designated as an interior landmark certain portions of the building interior including the clock tower suite. According to the 1987 designation, the Commission found in pertinent part that landmark status was warranted because the interior portions of the building have
“a special character, special historical and aesthetic interest and value as part of the development, heritage and cultural characteristics of New York City, and the Interior or parts thereof are thirty years old or more, and . . . the Interior is one *287 which is customarily open and accessible to the public, and to which the public is customarily invited” (the 1987 designation at 16).
The City sold the building to the owner by deed dated December 11, 2013. The deed for the building specifically states that ownership of the building is subject to the notice of designation.
The COA Application
This proceeding arises from the Commission’s issuance of a COA dated May 29, 2015 pursuant to New York City Landmarks Law (Administrative Code of City of NY, tit 25, ch 3) § 25-307 in response to the owner’s application dated August 13, 2014. The COA permits the owner “to construct a rooftop addition and bulkheads, replace windows, install a canopy, alter the facades and relocate and alter interior finishes” and “electrify[ ] the clock operation.” The owner’s proposed work would convert the building from an office building to a condominium with 144 units. At all times hereafter, the proposed work which the owner seeks to perform that is the subject of this proceeding is limited to work to the building’s existing landmarked fourteenth floor (consisting of a spiral staircase and an enclosure containing the weights and chains for a clock), the building’s existing landmarked fifteenth floor interior space (consisting of the spiral staircase leading to the clock tower machinery room and an enclosure containing the pendulum, weights and chains for the clock), and the building’s existing landmarked sixteenth floor interior space (consisting of the clock mechanism and machinery room, including the clock-faces), as well as the fixtures and other interior components of those spaces, including but not limited to wall, ceiling and floor surfaces, doors, stair railways, light fixtures, clock machinery and attached decorative elements. With this work, the owner seeks to convert the clock tower suite to a private condominium unit and convert the clock from mechanical to electrical.
On November 18, 2014, the Commission conducted a public hearing on the owner’s COA application. In addition to the Commission members, present at the hearing were Sara Carroll, the Executive Director of the Commission; Mark Silber-man, General Counsel for the Commission; Carly Bond, Commission Preservationist; Don Peebles, CEO of respondent The Peebles Corporation; John “Jack” Beyer, partner of BBB; Katelyn Lemos McHale, Senior Associate at BBB; and Gary Tarnoff and Valerie Campbell, attorneys for the owner. During his *288 testimony, Mr. Peebles explained that his company, The Peebles Corporation, is co-developing this building with the El Ad entities. BBB is the architect who had prepared the plans for work which the owner submitted with the COA application. While speaking about the clock tower suite, Mr. Beyer explained that the current space is not accessible to the public, is not Americans with Disabilities Act (ADA) compliant, and otherwise explained the proposed conversion of the clock tower suite to a single condominium unit. According to Mr. Beyer, electrifying the clock will not have a substantial impact on the primary purpose of the landmark itself and the mechanical mechanisms will be preserved for posterity.
The following individuals testified at the hearing: Bruce Er-man, Christabel Gough, Andrea Goldwyn, Lynn Elsworth, Jeremy Woodoff, Marvin Schneider, Forest Markowitz, Chris DeSantis, Eileen Herman and Preston Pesek. The parties have provided to the court a 204-page transcript of the hearing. At the hearing, several people voiced concerns about the “effective de-designation” of the clock (Barbara Zay [tr at 90, line 9]; Christabel Gough [tr at 92, lines 22-23]; Lynn Elsworth [tr at 98, lines 5-8]; Jeremy Woodoff [tr at 101, lines 10-22]). During the hearing, the following exchange took place concerning public access to the clock tower suite.
“Commissioner Baron: I want to go back to your point, you know, the designation of these interiors for the public benefit, and it seems to me that this especially an interior [sic] that warrants that kind of public interaction. But so I just ask whether or not there is the possibility of accessing it by at least the whole roofscape if, in fact, it didn’t belong exclusively to the owner below?
“Mr. Beyer: Well, the answer is it is possible, but it is not our intention to do that.
“Mr. Silberman: And Commissioners, if I can just jump in here a little bit. The issue of public access to these spaces, the issues that have come up and the Landmarks Law requires public accessibility to designate space. There’s no power under the Landmarks Law to require interior-designated spaces to remain public. And it’s something that we’ve seen in a modified form when lobbies have— securities have gone into lobbies to prevent the public from going in now, and it’s a reason that I would posit why there is only one other upper floor *289 designated space that’s not connected to a ground floor space, as the applicant has pointed out.
“These spaces are interspersed throughout this. They were accessible, I would point out, only because the city owned the building. They were not designed to be public in any way, and the[y] were available, publicly accessible for a period of time on and off, when the city owned it.
“For example, one of the room [sic] was a computer room that was — that is currently off to — that the public can’t go into. So the Commission has never— cannot require that they remain open to the public. “It does raise questions about, you know, we will be working with the applicants if this proposal is approved to provide for periodic inspections of these spaces and stuff like that. But there’s no power to require them to remain open.
“Commissioner Goldblum: Which was my question. If the unit on the 4th floor decides to redecorate, he’s got to submit to Landmarks?
“Mr. Silberman: It’s an awkward situation. “Commissioner Devenoshire [sic]: But is that true? He does have to?
“Mr. Silberman: Anything that would require affixing something to some of these spaces, some of these identified as architectural features, yes, he would.
“Commissioner Devonshire: I presume that’s an Enower clock, probably worth a hundred thousand dollars. If he decides to sell it on Ebay, is he allowed [to] do that?
“Mr. Silberman: No. He’s not allowed. He’s not allowed to remove the clock. And there’s no proposal to remove clock — I’m sorry, the mechanism. “Commissioner Goldblum: So if the owner — those are some of my questions. The owner of that unit will presumably have to grant the management the permission to maintain that clock however often as it needs to be maintained.
“Mr. Silberman: That’s a question — I mean, I would also point out there’s nothing in the Landmarks Law that requires or gives the Commission the power to require that this mechanism remain operable.
*290 “It’s — you know, the law talks about maintenance of features. It does not — whether it’s electrified or someone is allowed to wind it, that is not something the Landmarks Commission can require.
“Commissioner Goldblum: So maybe that’s a good thing.”
While the Commission generally lauded the proposal, Commissioner Moore opined about the proposed changes to the clock: “[t]o make it digital changes — it’s not a preservation of the clock.”
On December 16, 2014, the Commission conducted a public meeting on the COA application. The parties have provided to the court a transcript of this meeting as well. In addition to the Commission, present at the meeting was Jared Knowles, the Commission’s Director of Preservation; Mr. Silberman; Mr. Beyer; Ms. McHale and Mr. Tarnoff. At that meeting, Mr. Beyer said the following:
“So, the first point is the clock tower clock. We know that the clock is designated as a landmark element of the overall designation. We have determined that it is inaccessible to the public, legally and from a practical and a safety point of view.
“So, where the clock mechanism is located — I’ll go through that — cannot practically be open to the public; that’s a very important part of the commentary that was made. But I was to say that the owners have committed to keeping the entire clock mechanism where it is. We don’t intend to move anything. We intend to keep it where it is, but then our intention is to electrify the clock function so that it continues to provide correct time to the general public, which it always has, in the future.
“So a quick review of why this clock tower is inaccessible. First of all, this is a section, 14th floor. This is the room that you enter through the terrace which has the spiral stair and a very simple attractive plain room, and you go up through the 15th floor, which is the pendulum mechanism. Above that is the 16th floor, which is the clock mechanism, and via a ladder and hatch to the 17th floor where the bell is located. So we have a series of elements, all of which are designated, all parts of which, the bells, the mechanism — you name it — are designated, all of which will be retained and kept in *291 place, and the clock itself will be maintained electronically.”
Mr. Silberman stated the following at the meeting:
“It’s my opinion that the Landmarks Law, when it talks about accessibility, uses the present tense, and accessibility is defined as the power of the Commission to designat[e] a space. A space must, at the time of the designation, be customarily open and accessible to the public. So, for example, spaces that have been closed for extended periods of time have generally been deemed not designable by the Commission.
“The Commission historically has not required and has viewed the law as not giving it the power to require access. There is nothing in the law that says the Commission may — explicitly in the law that say interiors must remain open and accessible in the future. And so, there are a number of situations where, you know, the Commission has, you know, interior-designated spaces have been made unavailable to the public in the recent past because of security interests and concerns, for example.
“So, it is the position that the law does not — cannot require access to these interior spaces in the future. And I would point out that some of these spaces have not be[en] accessible for a long time now. Some of them have been used as private offices by the City agencies that have been in there. The public hasn’t been able to use those. So it’s something that reflects that reality and the difficulty of interior landmark designation, especially designations of spaces above the ground floor.”
The following exchanges also occurred at the meeting.
“Commissioner Goldblum: So if it is made in to a private person’s part of — or if it’s made into, let’s say, the condo’s space that was only accessible through a private person’s apartment, would it then still remain an interior landmark and they would have to maintain it?
“Mr. Silberman: Yes, and none of this changes the legal fact of designation. . . .
“Mr. Beyer: [W]e want to weatherproof the clock tower mechanism. It’s wide open; it’s windy; it gets wet. So we’re going to install a clear glass liner on *292 the inside fac[e] [of] the clock, which will protect the mechanism from the weather. We will be coming back to you with some lighting ideas. Presently, there’s a seri[es] of porcelain sockets that are— that’s circular arrangement that light the face of the clock, which we will update with the same idea, whether it will be different with LED lighting or something.
“So in effect, we are really protecting the mechanism. We’re preserving it by protecting it, as well as keeping it so that it will always be weather tight and available at any time for anybody to look at or to come back in some day and wind it up, who knows.
“Commissioner Chapin: I was going to say, so if in then some future date [sic], if someone did want to restore the mechanism, the complete mechanism would still be present and in at least current condition or close to current condition.
“Mr. Silberman: That is the intention.”
Mr. Silberman again opined that the Commission could not require that the clock remain mechanical or compel the owner to maintain public access:
“So I think that the Commission doesn’t require that things historically used in a certain way continue to be, okay?
“So, for example, sometimes main entrances are no longer the main entrance of a building, and there we allow different access. And, you know, the Commission has never required that something operate continuously, you know, that lights — you know, there would be no requirement, for example, that the sign on top of the Guardian Life Building continue to be lit. We don’t require that kind of continued use.
“And in the case, if, you know, if this clock broke, we wouldn’t — you know, let’s say they were continuing to [use] it and they couldn’t get a part, would we issue them a violation? No, of course, not.
“So the continued use of — this is a very, a very unusual designation, and I think reflects the fact that it was a city-owned property at the time, and it is very complicated. And I think that the Commission, it would be very problematic and I don’t *293 see any basis in the law to require that we — that it be continually used historically as it has been used in the past.
“And access, again, I think that the — what you said about the access, I think, is — you have to be careful. The issue of access gives us the ability to designate it. Okay? So it’s not integral to the thing itself, it allows us to actually get in the door, literally, to designate the space. The law does not require, again, that it remain open to the public and used.”
Ultimately, the Commission voted to approve the owner’s proposal. The COA defines the scope of the proposed work to the clock tower suite as follows:
“[At] the fourteenth floor of the Clocktower, the restoration of the cast iron spiral stairs and retaining the counterweight and enclosure . . . [A]t the fifteenth floor of the Clocktower, the restoration of the cast iron spiral stair and retaining the pendulum and enclosure; at the sixteenth floor of the Clocktower, the restoration of the cast iron spiral stair; disconnecting, retaining, and protecting the existing clock mechanism and the restoration of the wood and glass mechanism enclosure; and electrifying the clock operation.”
The scope of the work is further defined by perforated drawings which have not been provided to the court. The Commission stated in the COA that the “clock tower rooms . . . will be fully restored, and the clock mechanism and faces will be retained, thereby preserving these significant features.” In the COA, the Commission required the owner to record a restrictive declaration against the property that provides: (1) for an acknowledgement that “all designated interiors, whether converted to residential use or not, would continue to be subject to the requirements of the Landmarks Law”; (2) “for the permanent operation of the exterior clock faces of the clock tower by electronic or mechanical means”; (3) “for a cyclical inspection, reporting and maintenance program for the designated interior spaces on the upper floors that would be converted to residential use”; and (4) that the owner and any subsequent owners “provide reasonable access to the designated interior spaces to the Commission for periodic inspections and in response to reasonably credible complaints.”
*294 Parties’ Arguments
Petitioners argue that the Commission’s grant of the owner’s COA application was tantamount to a rescission of the clock’s and the clock tower suite’s landmark status. Petitioners specifically contend that the owner cannot unilaterally close off public access to the clock tower suite and then use the fact that the public does not access the clock tower suite to bolster its claim that conversion of the clock tower suite to a private condominium is otherwise appropriate. Petitioners further argue that it is within the Commission’s power to compel the owner to keep the clock tower suite open to the public. Otherwise, petitioners maintain that the COA itself is impermissibly vague as to the scope of the work to be performed.
Respondents argue that the record demonstrates that the Commission’s actions were not arbitrary, capricious, an abuse of discretion, an error of law or in violation of lawful procedure. They further contend that since the Landmarks Law does not require that a designated interior remain open to the public in perpetuity or otherwise grant the Commission the power to compel the owner of a landmarked interior to do so, the Commission’s interpretation of the Landmarks Law should be deferred to by this court. Finally, respondents contend that the COA itself is not vague. Rather, the COA contains detailed monitoring provisions and requires the owner to ensure notice to future owners about the designation of the building and that the scope of the work is clearly defined by the drawings annexed to the COA and/or the COA application.
Discussion
In a CPLR article 78 proceeding, the applicable standard of review is whether the administrative decision was made in violation of lawful procedure; affected by an error of law; or arbitrary and capricious or an abuse of discretion, including whether the penalty imposed was an abuse of discretion (CPLR 7803 [3]). An agency abuses its exercise of discretion if it lacks a rational basis in its administrative orders. “[T]he proper test is whether there is a rational basis for the administrative orders, the review not being of determinations made after quasi-judicial hearings required by statute or law” (.Matter of Pell v Board ofEduc. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974] [emphasis omitted]; see also Matter of Colton v Berman, 21 NY2d 322, 329 [1967]).
*295 Pursuant to New York City Charter § 3020 and Landmarks Law § 25-303, the Commission is vested with the exclusive authority and discretion to consider and designate landmarks subject to modification or recision by the New York City Council. Landmarks Law § 25-304 (b) defines the scope of the Commission’s powers:
“the commission may, . . . apply or impose, with respect to the construction, reconstruction, alteration, demolition or use of such improvement or landscape feature or the performance of minor work thereon, regulations, limitations, determinations or conditions which are more restrictive than those prescribed or made by or pursuant to other provisions of law applicable to such activities, work or use.”
At a public meeting subsequent to a public hearing, the Commission considers whether to designate an improvement, interior, scenic landmark or historic district. If the Commission votes to designate, the designation is effective upon vote and is referred to the City Planing Commission which has 60 days to issue a report to the City Council. The City Council then has 60 days upon receipt of this report to either modify/rescind the designation or take no action. If the City Council does not take any action, the designation stands (see Landmarks Law § 25-303 [g]). The Commission itself may also rescind/modify any designation after a public hearing (Landmarks Law § 25-303 [h]). Rescission/modification of a designation follows the same procedures as designation itself (id.).
Before a building owner can perform certain work on landmark properties, the owner must apply to the Commission for a permit known as a COA (Landmarks Law § 25-305). The Commission must hold a public hearing on each request for a COA (Landmarks Law § 25-308). Landmarks Law § 25-307 lists the following relevant factors governing the Commission’s issuance of a COA:
“a. In any case where an applicant for a permit to construct, reconstruct, alter or demolish any improvement on a landmark site, or in an historic district or containing an interior landmark, files such application with the commission together with a request for a certificate of appropriateness, and in any case where a certificate of no effect on protected architectural features is denied and the applicant thereafter, pursuant to the provisions of section 25-306 of this chapter, files a request for a *296 certificate of appropriateness, the commission shall determine whether the proposed work would be appropriate for and consistent with the effectuation of the purposes of this chapter. If the commission’s determination is in the affirmative on such question, it shall grant a certificate of appropriateness, and if the commission’s determination is in the negative, it shall deny the applicant’s request, except as otherwise provided in section 25-309 of this chapter. . . .
“e. In making the determination referred to in subdivision a of this section with respect to an application for a permit to alter, reconstruct or demolish an improvement containing an interior landmark, the commission shall consider the effects of the proposed work upon the protection, enhancement, perpetuation and use of the interior architectural features of such interior landmark which cause it to possess a special character or special historical or aesthetic interest or value.”
Violation of Lawful Procedure
The court rejects petitioners’ arguments that the Commission violated lawful procedure. Specifically, petitioners contend that the Commission “converted [an interior landmark] to exclusive private use without effecting a rescission of the designation.” Pursuant to Landmarks Law § 25-302 (m), an interior landmark is:
“An interior, or part thereof, any part of which is thirty years old or older, and which is customarily open or accessible to the public, or to which the public is customarily invited, and which has a special historical or aesthetic interest or value as part of the development, heritage or cultural characteristics of the city, state or nation, and which has been designated as an interior landmark pursuant to the provisions of this chapter.”
The Landmarks Law does not expressly prohibit the grant of a COA where the work would essentially privatize an interior landmark. Nor did the Commission actually rescind the clock tower suite’s designation and relatedly the court rejects petitioners’ characterization of the COA as a de facto rescission. The Commission merely granted a permit for the owner to do certain work. The Commission did so after observing all of the procedures set forth under the Landmarks Law applicable to an owner’s application for permission to perform such *297 work: the Commission held a public hearing upon receiving the owner’s application for the COA and thereafter conducted a public meeting.
Irrational or Arbitrary and Capricious
Based on the record here, the court is compelled to find that the Commission has acted arbitrarily and irrationally by granting the COA. There are two specific determinations that the Commission implicitly made which the court must consider: (1) whether there was a rational basis to permit work which would eliminate public access to the clock tower suite; and (2) whether there was a rational basis to permit conversion of the clock from mechanical to electrical operation. The court answers the first question in the negative. Since the clock tower suite is an interior landmark, one of its defining characteristics at the time of its designation was that it was “customarily open or accessible to the public, or to which the public [wa]s customarily invited” (Landmarks Law § 25-302 [m]). The work which the COA permits would render the clock tower suite inaccessible to the public. During the course of the public hearing and meeting, members of the Commission voiced their concerns that this particular interior landmark poses several problems. Those problems stem from the Commission’s belief that it cannot force a private owner to maintain public access to an interior landmark. The Commission noted that the clock is different from nearly all of the other interior landmarks in the City because it is so far removed from the entrance of the building. Indeed, members of the Commission indicated that the Commission would not likely vote to designate the clock tower suite today.
Assuming arguendo that the Commission does not have the authority to compel the owner to keep the interior landmark open to the public, there still is no rational basis for the Commission to permit work to be performed which would completely eliminate public access to an interior landmark. Indeed, when the City Council enacted the Landmarks Law, it
“declared as a matter of public policy that the protection, enhancement, perpetuation and use of improvements and landscape features of special character or special historical or aesthetic interest or value is a public necessity and is required in the interest of the health, prosperity, safety and welfare of the people” (Landmarks Law § 25-301 [b]).
*298 Further, the court’s holding is informed by the legislature’s clearly expressed intent to provide for a separate and more stringent procedure where an owner seeks rescission of landmark status as compared to the more expedient procedure of appropriateness review (Landmarks Law § 25-303 [h]). Instead of merely issuing a COA, the Commission must adopt a resolution proposing rescission and file that resolution with the City Council and the City Planning Commission. Then, the City Planning Commission prepares a report concerning the resolution to the City Council which then may approve, disapprove or modify rescission. The City Council’s action is subject to mayoral veto and that veto may be overridden by a two-thirds vote of the City Council.
In light of the Commission’s purpose of protecting, enhancing and perpetuating landmarks, and given that work which the COA permits would render the clock tower suite ineligible to be designated an interior landmark once that work is completed, it was irrational and arbitrary for the Commission to issue the COA on this record. Simply because the Commission questions whether the clock tower suite would be designated presently or the scope of its own police power with respect to interior landmarks does not provide a rational basis for authorizing the work which the owner intends to perform. Nor does the cyclical inspection and notice to future owners provisions of the COA save it from its irrationality. The court questions the Commission’s conclusion that it has the power to inspect an interior landmark that the public no longer has access to in light of its inconsistent position that it does not have the power to direct a private owner to maintain public access to an interior landmark.
Nor does the fact that the public may not presently have access to the clock tower suite, whether that is through the present owner’s efforts or not, warrant a different result. Indeed, whether the clock tower suite’s designation should be rescinded remains an open question which is not presently before the court. Further, whether the clock tower suite is ADA-compliant is of no moment since the Landmarks Law does not mandate such a requirement in order for a designation to maintain landmark status. Indeed, the Landmarks Law does not define public access.
Respondents also argue that despite converting the clock tower suite into a private condominium, this interior landmark remains open to the public since the public can see the clock’s exterior faces. This argument fails since the exterior of the *299 clock was not designated a landmark, but rather, the entirety of the clock tower suite, and specifically the clock’s internal mechanisms, were designated an interior landmark. Accordingly, the COA, to the extent that it permits work which would turn the clock tower suite into a private condominium, must be annulled.
As for the second issue proposed by the COA, whether the Commission had a rational basis to permit conversion of the clock to electrical operation, the court agrees with respondents that it did. Respondents argue that electrical operation of the clock will make its operation more modern and easier to maintain, and that the exterior clockfaces will remain visible to the public. Further, the Commission directed the owner to continue to operate the clock by either electrical or mechanical operation and record a restrictive declaration to that effect. The court cannot substitute its judgment for that of the Commission’s and must defer to the Commission on matters within its own area of expertise. Petitioners’ dissatisfaction with the loss of a rare mechanical clock is insufficient to warrant annulment of that portion of the COA which permits the corresponding work on the basis that the COA is irrational or arbitrary.
Petitioners’ further argument that the operation of the clock is outside the Commission’s area of expertise is rejected because it relies upon a mischaracterization of the scope of the Commission’s authority. Again, the Commission is vested with broad discretion to consider the effects of the proposed work upon the protection, enhancement, perpetuation and use of the clock which cause it to possess a special character or special historical or aesthetic interest or value (Landmarks Law § 25-301 [b]). Here, the record demonstrates that the Commission did consider the effects of conversion of the clock to electrical operation and that it had a rational basis for its determination. To the extent that petitioners argue that the Commission acted in derogation of its duties by permitting electrification of the clock, that argument is based upon their own point of view as to the clock’s architectural, historic and social significance. However, these are matters that fall squarely within the Commission’s area of expertise.
Errors of Law
Nonetheless, the court finds that the Commission’s decision to permit conversion of the clock from mechanical to electrical operation was effected under a mistake of law. Mr. Silberman, General Counsel for the Commission, advised the *300 Commission on November 18, 2014 that since the Landmarks Law does not expressly authorize the Commission to require that the clock remain mechanical, the Commission did not have “the power to require that this mechanism remain operable.” The court disagrees with Mr. Silberman’s interpretation of Landmarks Law § 25-304.
“It is a well-settled principle that while the correct interpretation of a statute is ordinarily an issue of law for the courts, an administrative agency’s interpretation of the statute it is charged with implementing is entitled to varying degrees of judicial deference depending upon the extent to which the interpretation relies upon the special competence the agency is presumed to have developed in its administration of the statute” (Roberts v Tishman Speyer Props., L.P., 62 AD3d 71, 79-80 [1st Dept 2009] [internal quotation marks omitted], quoting Matter of Rosen v Public Empl. Relations Bd., 72 NY2d 42 [1988]).
Here, the Commission’s reading of Landmarks Law § 25-304 is not entitled to deference since its interpretation of the Landmarks Law is a question of law (see also Matter of Teachers Ins. & Annuity Assn. of Am. v City of New York, 82 NY2d 35 [1993]). Therefore, the court rejects respondents’ argument that the Commission’s interpretation of its own statute should be deferred to.
Landmarks Law § 25-304 defines the scope of the Commission’s powers broadly. Further, Landmarks Law § 25-307 (a), concerning the factors governing the issuance of a COA, specifically states that the Commission “shall determine whether the proposed work would be appropriate for and consistent with the effectuation of the purposes of this chapter.” A principal rule of statutory construction is that a statute should be construed so as to give effect to the plain meaning of the words used therein (Columbus 95th St., LLC v New York State Div. of Hous. & Community Renewal, 81 AD3d 269 [1st Dept 2010]). Moreover, “a court cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the [[legislature did not see fit to enact” (Matter of Chemical Specialties Mfrs. Assn. v Jorling, 85 NY2d 382, 394 [1995]).
Here, the legislature has not specifically limited the Commission’s powers to impose any regulation, limitation or restriction on the maintenance of a landmark. Indeed, under Land *301 marks Law § 25-302 (x) (1) (b), it is a type A violation to “remov[e] ... or alter[ ] . . . a significant portion of a protected feature of an interior landmark as described in the designation report.” Absent an express limitation of the Commission’s powers, the court disagrees with Mr. Silberman’s interpretation of the law upon which the Commission’s decision to grant the COA was implicitly based. There can be no dispute that the internal mechanism by which the clock operates is a significant portion of the clock itself and if the Commission can issue a violation for its removal or alternation, the legislature intended to give the Commission the power to compel the owner to maintain the clock’s mechanical operation. Since the court finds that the Commission does have the power to require that the clock be maintained mechanically, the COA as to the proposed work in the clock tower suite must be annulled in its entirety.
Remaining Issues
Relatedly, the court finds that even if the Commission’s decision to permit work which would eliminate public access to the clock tower suite was not irrational, this decision was based on an error of law. Mr. Silberman advised the Commission that since the Landmarks Law does not expressly require that an interior landmark remain open to the public, the Commission did not have the power to compel the owner to maintain public access to the clock tower suite. The Court of Appeals has noted that despite the burdens of landmark designation imposed upon property owners, the courts must enforce the “unambiguous statute ... as the City legislature has written it” (Matter of Teachers Ins. & Annuity Assn. of Am., 82 NY2d at 43). Even though the Landmarks Law does not expressly require that public access to an interior landmark be maintained, absent an express limitation to that extent, the general provisions of the Landmarks Law vest the Commission with the power to regulate an interior landmark. That power must include the ability to direct an owner to maintain public access, since public access is a specific characteristic of an interior landmark.
As for petitioners’ claim that the COA is impermissibly vague, the court declines to reach this argument as moot since the court is vacating the subject portion of the COA on other grounds.
Petitioners also seek declarations that (1) the COA is tantamount to a rescission of the clock tower suite’s designation; (2) the Commission has the power and obligation to *302 require respondents to keep the tower clock operable and mechanical and available to be wound, serviced and maintained, and to keep the clock tower open to the public; and (3) respondents’ application to convert the clock tower suite to private use may not properly be the subject of appropriateness review. For the reasons already stated herein, the court finds that the COA is not “tantamount to a rescission” of the subject designation. Petitioners are however entitled to the remaining declarations (see supra).
Finally, petitioners seek an order enjoining the respondents, their employees, agents, successors, etc., from denying public access to the clock tower suite, from dismantling, disassembling, de-mechanizing, and/or electrifying the clock, and directing respondents to maintain the clock tower suite and the clock in good condition and repair. Petitioners are not entitled to this branch of the relief they seek. As for the clock itself, without the COA or a certificate of no effect (see Landmarks Law § 25-305 [b]), the owner cannot dismantle, disassemble or de-mechanize the clock. Therefore, this request for relief is moot.
As for public access, the court has already held that the Commission has the power to direct the owner to establish and/or maintain public access. The nature and extent of that public access is within the Commission’s discretion, to be determined by it in the exercise of its duties under the Landmarks Law. The court notes that the Landmarks Law is silent as to ongoing public access after an interior landmark is designated, and absent a reviewable determination by the Commission, there is no basis for the court to direct respondents to provide public access to the clock tower suite. Therefore, petitioners’ claims for injunctive relief are denied in their entirety.